## Case No. 16,867.

### VAN NESS v. HYATT et al.

[5 Cranch, C. C. 127.] [1]

Circuit Court, District of Columbia. March Term, 1837. [2]

UNRECORDED LEASE—EQUITY OF REDEMPTION IN LEASEHOLD ESTATE—EXECUTION.

1. A lease for ten years, not recorded, is good for seven years, under the law of Maryland.

2. The equity of redemption of a leasehold estate cannot be seized and sold under a fieri facias.

Bill in equity [by John P. Van Ness against Alpheus Hyatt, James Shields, Ann Blanchard, Charles Glover, and Jane, his wife, Mary Franks, and James Moore] to redeem a mortgage of a leasehold estate; the complainant claiming as purchaser of the equity of redemption sold under a fieri facias against Shields, the mortgagor, upon a judgment for $30.25, recovered before a justice of the peace. The cause was set for hearing on the bill, answers, general replication, and exhibits. The material facts appear to be as follows: On the 31st of December, 1818, William Cocking, being seized in fee of part of lot 12, in square 406, in the city of Washington, by indenture of that date, leased the same to the defendant, James Shields, for ten years from the 1st of January, 1819, at the rent of $35 a year, clear of taxes, &c., and to build a two-story brick house thereon within twelve months, with leave to purchase the fee-simple at the end of the ten years, by paying $375 and all arrears of rent. This lease was duly acknowledged, but was never recorded. Shields built the two-story house according to contract, and on the 23d of September, 1823, mortgaged the house and lot to the defendant, John Franks, to secure a debt of $1,129.18. On the 19th of August, 1825, Charles W. Botelor, a constable of Washington county, D. C., executed a deed to Mr. Van Ness, duly acknowledged and recorded, which recites a writ of fieri facias, stating a judgment on the 8th November, 1825, in favor of Mr. Van Ness against Shields for $28.40, and $1.27 interest and fifty-eight cents costs, commanding the constable to levy the debt, damages, and costs, "of the goods, chattels, lands, and tenements" of Shields; and that the constable "laid the same upon a certain lot of ground of him, the said James Shields, that is, upon the right, title, estate, interest, and claim of him, the said James Shields, therein lying and being in the city of Washington, and being part of lot No. 12, in square 406, beginning," &c., "as the same was then occupied and held by the said Shields;" and on the 10th of July, 1824, exposed "the said part of a lot, &c., that is, all the right, title," &c., to public sale to the highest bidder, and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 13 Pet. (38 U. S.) 294.]

that Mr. Van Ness became the highest bidder and purchaser thereof for $54, and has paid the purchase-money to the constable, in consideration of which, and of five dollars paid, &c., the constable gives, grants, bargains and sells, transfers and assigns to Mr. Van Ness, his executors, administrators, and assigns, "the said part of a lot, that is, the right, title, estate, interest, and claim of him, the said James Shields therein, so as aforesaid taken on the said writ of fieri facias, and so as aforesaid exposed to sale in virtue of said writ, with the improvements and appurtenances to the same belonging, unto the said John P. Van Ness, his executors, administrators, and assigns, and to their only proper use and behoof." There was no habendum in the deed. The recitals in the deed were admitted by the parties to be true, so that the judgment, execution, levy, and sale of Shield's right, the purchase by Mr. Van Ness, and the payment of the purchase-money, are admitted; provided, that such a right, as Shields then had, could be levied upon, taken, and sold, under such a fieri facias. On the 7th of May, 1825, Franks assigned his mortgage to the defendant, Alpheus Hyatt, for a full and valuable consideration; and on the 9th of May, 1825, Shields assigned to Hyatt all his equity of redemption, in consideration of $200. There was no evidence, that, at the time of these assignments, Hyatt had any notice or knowledge of the judgment against Shields. William Cocking died seized of the reversion in fee-simple, which descended to his two daughters, Ann Blanchard and Jane Glover, who, on the 16th of April, 1826, assigned to Hyatt all their right as heirs at law of the lessor, William Cocking, for a valuable consideration. The execution recites, that "whereas on the 8th day of November, 1823, a certain John P. Van Ness, by the judgment of —— recovered against a certain James Shields, the sum of $28.41, debt, &c., which judgment was superseded by one James B. Holmead," the constable was commanded that of the goods and chattels, lands and tenements of the said James Shields, and James B. Holmead, he should cause to be levied the debt, &c. The levying of the execution, and the sale under it, being before the assignment of the equity of redemption by Shields to Hyatt, there was nothing left for the assignment to operate upon, if that equity was lawfully levied upon, and sold under the execution; and that is the principle question in the case.

R. S. Coxe, for complainant, cited the following authorities: Rex v. Inhabitants of St. Michael, 2 Doug. 630; M'Call v. Lenox, 9 Serg. & R. 312; Jackson v. Hull, 10 Johns. 481; Monell v. Lawrence, 12 Johns. 521, 529; Waters v. Stewart, Caines, Cas. 47; Wilson v. Troup, 2 Cow. 230; Hitchcock v. Harrington, 6 Johns. 294; Inhabitants of Groton v. Inhabitants of Boxborough, 6 Mass. 50; Bolton v. Ballard, 13 Mass. 229; Town of Bark-

hamsted v. Town of Farmington, 2 Conn. 600; Collins v. Torry, 7 Johns. 278; Runyan v. Mersereau, 11 Johns. 538; Jackson v. Dickenson, 15 Johns. 309; Coles v. Coles, Id. 319; Titus v. Neilson, 5 Johns. Ch. 452; 5 Gwill. Bac. Abr. 16, tit. "Mortgage," c; Harrison v. Eldridge, 2 Halst. [7 N. J. Law] 392; Casborne v. Scarfe, 1 Atk. 603; 2 Fonb. 262, note; Jackson v. Willard, 4 Johns. 41; D'Arcy v. Blake, 2 Schoales & L. 387; Jackson v. Bronson, 19 Johns. 326; Campbell v. Pratt, 9 Cranch (13 U. S.) 459.

Mr. Morfit, contra, cited Harding v. Stevenson, 6 Har. & J. 267; Warren v. Childs, 11 Mass. 226; Metcalf v. Scholey, 2 Bos. & P. (N. R.) 461; Wilkes v. Ferris, 5 Johns. 335, 343; Scott v. Scholey, 8 East, 467; Shirley v. Watts, 3 Atk. 200; Burden v. Kennedy, Id. 739; Lyster v. Dolland, 3 Brown, Ch. 480, and 1 Ves. Jr. 431; Warren v. Howe, 3 Dowl. & R. 494, 2 Barn. & C. 281; Cadogan v. Kennet, Cowp. 432; Plunket v. Penson, 2 Atk. 292; Cox's Case, 3 P. Wms. 342; Cattel v. Warwick, 1 Halst. [6 N. J. Law] 192; St. Mass. March 1, 1799; State v. Laval, 4 McCord, 341; Reads v. Symmes, Ohio Cond. R. 141; Phelps v. Butler, Id. 331; Denton v. Livingston, 9 Johns. 99, 100; Bogart v. Perry, 1 Johns. Ch. 56, 57; Davis v. Maynard, 9 Mass. 242; Punderson v. Brown, 1 Day, 93; Scripture v. Johnson, 3 Conn. 211; Boring v. Lemmon, 5 Har. & J. 223; Perry v. Coates, 9 Mass. 537; Maine Fire & Marine Ins. Co. v. Weeks, 7 Mass. 438; Ingalls v. Lord, 1 Cow. 240; Com. Dig. "Execution," C, 4; Picquet v. Swann [Case No. 11,133]; Bac. Abr. "Execution," C, 4.

CRANCH, Chief Judge. The first question which presents itself, is: 1. Did any and what legal estate pass from Cocking to Shields, by the lease of December 31, 1818, purporting to be a lease for ten years, but not recorded. By the Maryland act of 1766 (chapter 14, § 2) it is enacted, that "no estate of inheritance or freehold, or any declaration or limitation of use, or any estate for above seven years, shall pass, or take effect, except the deed or conveyance, by which the same shall be intended to pass or take effect, shall be acknowledged," &c., "and be also enrolled in the records of the same county," &c., "within six months after the date of such deed or conveyance." At common law the lease would be good for ten years; and under the English registry acts, it would be equally good between the parties. Jones v. Gibbons, 9 Ves. 407; and the policy of the act of Maryland, 1766 (chapter 14) does not seem to require that the conveyance, as between the parties, should be void. It says that no estate for above seven years shall pass, but it does not say that an estate for seven years shall not pass by a deed purporting to be for ten years. Statutes, restricting common-law rights, should be construed strictly. The statute does not make void the deed; it only limits its operation

to seven years. Deeds must be construed most strongly against the grantor. He had power to make a lease for seven years without recording it. To give this lease the same effect, is to give to the statute all the effect which is indicated by its spirit. I think, therefore, that the lease was good for seven years, and passed a legal estate to Shields for that term. His legal estate continued, therefore, until the 1st of January, 1826; or rather until the 23d of September, 1823, when he mortgaged it to Franks by an assignment of that date. After January 1, 1826, when the legal estate expired, Franks. the mortgagee, had still an equitable interest in the house and lot for the residue of the ten years, with the privilege of buying in the fee-simple at the expiration of that term by paying three hundred and seventy-five dollars, and all arrears of rent; and Shields had a right to redeem the property from Franks by paying the mortgage debt. In the meantime, however, namely, on the 7th of May, 1825, Franks had assigned his mortgage to the defendant. Hyatt, for a valuable consideration; and Shields had, on the 9th of May, 1825, assigned to Hyatt his equity of redemption; and on the 16th of April, 1826, Hyatt purchased the reversion in fee from the heirs of Mr. Cocking; so that Hyatt obtained a complete title in fee, unless intercepted by the fieri facias and sale, in the suit of Van Ness v. Shields. That sale was made on the 10th of July, 1824, before Franks and Shields had assigned their respective rights to Mr. Hyatt. Under that sale Mr. Van Ness claims to be clothed with all the rights which Shields had, on that day. What were they? His right of redemption, namely, to redeem the residue of the term which had, at most, only five and a half years to run. This was the whole of his right as mortgagor. His right to purchase the reversion is a mere right in equity founded upon a contract. It never was any part of his legal estate in the land. It was a mere equity. All those cases, therefore, which support the doctrine that the mortgagor is to be considered as the legal owner of the estate until foreclosure, do not apply to the right to purchase the reversion. That is a mere equity which, all the books agree. cannot be touched by fieri facias.

2. The second question is, whether an equity of redemption can be seized, appraised, and sold under a fieri facias? Upon this question the decisions of the courts, in the several states, have been various and conflicting. The present case, however, must depend upon the law of Maryland, which is the English common law, as far as it was applicable to that state, and to this part of the District of Columbia on the 27th of February, 1801. In England it is believed, no case can be found, in which an equity of redemption has been seized and sold under a fieri facias, or extended upon an elegit. In the case of Plunket v. Penson, 2 Atk. 292, (decided in the year 1742,) Lord Chancellor Hardwicke said: "I should be glad to be informed whether

there is any instance where an equity of redemption has ever been held liable to the execution of a bond-creditor in the lifetime of the mortgagor. To which the counsel in this case made answer, they could not recollect any instance when it had been so held. In the case of Sir Charles Cox's Creditors, 3 P. Wms. 342 (decided in 1734), Sir Joseph Jekyll, master of the rolls. said: "Wherefore this right of redemption, being barely an equitable interest, it was reasonable to construe it equitable assets. and consequently distributable among all the creditors pro rata;" and it was so decreed.

The fact, that a right of redemption after forfeiture cannot be enforced at common law, is conclusive evidence that it is not a legal right, nor a legal estate. In Lyster v. Dolland, 3 Brown Ch. 478, 1 Ves. Jr. 431, the mortgagee filed a bill for foreclosure; pending which he brought suit at law on the bond given for the mortgage-money, and also an ejectment upon the mortgage, and recovered judgment upon the bond, and got possession by the ejectment; and then took the mortgaged premises in execution by fieri facias upon the judgment on his bond, and the sheriff sold the same to a person in trust for the mortgagee. The personal representatives of the mortgagor brought their bill to redeem. there having been no decree of foreclosure. The defendant contended that the sale under the fieri facias was equivalent to a foreclosure. But the chancellor decided against him, and permitted the plaintiffs to redeem, "on the ground that an equity of redemption was not liable to be taken in execution." The question was afterwards, in the case of Scott v. Scholey, 8 East, 481, fully argued. and solemnly decided by the court of king's bench. Lord Ellenborough, in delivering the opinion of the court, stated the question to be, "whether an equitable interest in a term of years can be sold under a fieri facias." and said, "the sheriff's authority is derived under a writ by which he is commanded to cause to be made, of the goods and chattels of the defendant, the sum recovered; and which sum is, of course, to be made by the sale of the things taken under the execution. If the sheriff should not be able, before the writ is returnable, effectually to execute it in this particular, he is allowed to excuse himself by returning that the goods remain in his hands unsold for want of buyers; upon which another writ issues. commanding him to expose for sale the goods so remaining in his hands unsold. The language of these writs and return evidently imports that the goods and chattels which are the objects of them, are property of a tangible nature, capable of manual seizure, and of being detained in the sheriff's hands and custody, and such also as are conveniently capable of sale and transfer by the sheriff to whom the writ is directed, for the satisfaction of the creditor. The legal interest in a term of years, both in respect of the possession of which the leasehold

property itself is capable, and also in respect of the instrument by which the term is created and secured, both of which are capable of delivery to a vendee, has been always held to answer the description of the writ, and to be salable thereunder. Dyer, 363, a. But no single instance is to be found in the history and practice of the courts of common law, in which an equitable interest, in a term of years, has ever been recognized as salable, (seizable, of course, it cannot be,) under a fieri facias." And in page 485, he says: "The sale of such an interest, if it were to be made at all by the sheriff, must necessarily be made under circumstances of still greater ignorance and uncertainty as to its value, than attend sales of any other description of property; and not only without any legal means of delivering a present possession of the thing sold, but, in general. without having even the type or instrument of any legal interest whatsoever, present or future, in the subject of such sale, to exhibit to the sight, or to deliver to the hands of a purchaser. It has indeed been urged in argument, as an inconvenience on the other side, if such equities of redemption in chattel interests shall be held not to be salable, under an execution, that, by means of a mortgage of the largest leasehold property for the smallest sum imaginable, such property might be effectually protected, and withdrawn from the legal claims of every creditor. But the inconvenience, in the case put, does not extend beyond the necessity which such a step would occasion, of resorting to a different remedy, to be applied in another court, for the purpose of obtaining it. In a court of equity he might be let in to redeem such mortgage incumbrances as stood in the way of his common-law remedy by execution; or he might have a decree for the sale of the mortgage-term itself in satisfaction of his rights as an execution creditor. Shirley v. Watts, 3 Atk. 200, is an authority for this purpose. as is also the case of Burden v. Kennedy, 3 Atk. 739. In the case of Lyster v. Dolland, reported in 3 Brown, Ch. 480, and 1 Ves. Jr. 431. Lord Thurlow was, at last, of opinion that an equity of redemption of a term could not be taken in execution. though, at first. under an apprehension that the language of the tenth section of the statute of frauds applied to such a case, he had inclined to hold otherwise. But the very silence of that statute. which, while it expressly introduces a new provision in respect to lands and tenements held in trust for the person against whom an execution is sued, says nothing of the trusts of chattel-interests; affords a strong argument that those interests were intended to continue in the same situation and plight, in respect of executions in which both leasehold, and freehold trust-interests equally stood, prior to the passing of that statute." The same point was decided by the court of common pleas in the case of Metcalf v. Scholey, 2 Bos. & P. (N. R.) 461. In the case of M'Call v. Lenox, 9 Serg. & R. 312, Dun-

can, J., said: "In England the equity of redemption is not extendible on an execution." In Waters v. Stewart. Caines. Cas. 47. Spencer, J., said: "I take it to be well settled that in England there cannot be a sale of an equity of redemption upon a mortgage for a term of years." And Kent, J., said: "I admit that under the English law, an equity of redemption cannot be sold by process of law." In the case of State v. Laval. 4 McCord. 341, Nott, J., said: "That is what is called an equity of redemption; and I take it to be a well-settled rule of law, that a mere equity is not the subject of a levy and sale under an execution. A fieri facias can operate only on a legal estate; and it is confounding all legal distinctions, to say that an execution can be levied on an equity of redemption. It is said that in Massachusetts. Connecticut. and New York. an equity of redemption may be levied upon and sold under a fieri facias from a court of law. I have not looked into those cases because the question is quite unimportant as it regards the case now under consideration. For our act of 1791 expressly provides that the fee shall continue in the mortgagor; and that the mortgage shall be considered only as a pledge for the security of the money; and the mortgagor is entitled to redeem. even after the time stipulated, by the parties, for redemption, is past. It is true that the act of 1797, does call this, in conformity with the language of the English books. an equity of redemption; but it is clearly a misnomer. The right to redeem is, unquestionably, a legal, and not an equitable right. The mortgagor has the legal estate, because it is so expressly declared by the act. He has a legal right to redeem because that is as expressly given," "and because the aid of the court of equity is not necessary to the exercise of it." In the case of Roads v. Symmes, Ohio Cond. R. 141, the court said: "There is no principle upon which it can be held that a judgment may bind an interest which cannot be seized and sold to satisfy it." "The liability of equitable interests in land to be seized and sold upon execution. as land, has never been recognized by this court. as existing either under the territorial or state governments." And in Burden v. Kennedy. 3 Atk. 739. Lord Chancellor Hardwicke said: "Where an execution by elegit or fieri facias is lodged in a sheriff's hands, it binds goods from that time, except in the case of the crown, and a leasehold estate is also affected from that time;" "but in the present case. here is only an equity of redemption, in the debtor, in the leasehold estate, and an execution lodged will not affect this, as the legal estate is in the mortgagee."

A number of cases have been cited to show, that in several of the states, namely, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania. South Carolina. and Ohio, the courts have decided that an equity of redemption may be sold under a fieri facias;

but it will be found, upon examination of those cases, that they rest upon the construction given by those courts to the words of the several statutes, subjecting real estate to execution, and of the statute of 5 Geo. II. c. 7, which has been differently construed in different states; and none of those cases can be considered as in any manner affecting the law of Maryland as it existed on the 27th of February, 1801, when it was adopted by congress as the law of this part of the District of Columbia. In no case had the courts of Maryland, before the 27th of February, 1801, ever decided that an equity of redemption could be seized and sold under a fieri facias. On the contrary, by the act of 1794 (chapter 60, § 10) it is provided, that, "whereas, it often occurs that persons, against whom judgments and decrees are obtained, hold and possess, or claim lands, tenements, or hereditaments, by equitable title only, and the creditor or creditors of such persons are often without remedy either at law or in equity, be it enacted, that, in such cases, it shall and may be lawful for the chancellor, on application, to decree a sale of such equitable interest for the benefit of the creditor or creditors applying for the same; and the purchaser or purchasers thereof, under such decree, shall, upon payment of the purchase-money, be entitled to an assignment of such equitable interest, to be made by the trustee making such sale, and shall be entitled to such remedies, both in law and equity, against all persons, and in all cases, as the person could or might have had, whose title he, she, or they may claim by virtue of such purchase." And by the act of 1810 (chapter 160) it is enacted, "that it shall and may be lawful for any sheriff or other officer to whom any writ of fieri facias shall be directed, to take, seize, and expose to sale, any equitable estate or interest which the defendant or defendants named in such writ of fieri facias may have or hold in any lands, tenements, or hereditaments;" and it provides for an assignment thereof, by the officer, to a purchaser, who is thereby entitled to such remedy against all persons, and in all cases, as the person, whose title he may so purchase, could have had. This act was passed after the separation of this part of the District from the state of Maryland, and therefore was never in force here, but it shows what the law of Maryland was before the passing of the act, namely, that an equitable estate or interest in lands could not be seized and sold under a fieri facias. It seems clear, therefore, that such was the law of Maryland on the 27th of February, 1801, and such must still be the law unless it has been altered by some act of congress. But it is said that it has been altered, as to writs of fieri facias issued upon the judgment of a justice of the peace, by the act of congress of the 24th of June, 1812, § 16 (2 Stat. 755), by which it is enacted, "that upon a fieri facias issuing out of the office of the clerk of the county of Washing-

ton, upon the judgment of a magistrate, the plaintiff, upon such fieri facias, shall be entitled to have his execution against the goods and chattels, lands and tenements, rights and credits of the defendant." The execution, in the present case, did not issue out of the office of the clerk of the county of Washington, but was issued by the magistrate himself, and is, therefore, not within the letter of the act of 1812.

But it is said, that by the third section of the act of the 1st of March, 1823 (3 Stat. 743), "to extend the jurisdiction of the justices of the peace," the justice of the peace is "authorized to issue execution or fieri facias in the same manner as executions are now issued by the clerk of the circuit court of the District of Columbia;" and it is supposed, that because the justice is to issue them in the same manner, they are to have the same effect. This does not seem to be a necessary consequence; but, admitting that it is, yet the fieri facias, issued by the clerk, never bound an equity of redemption. It cannot be contended that it is goods and chattels; and it was not lands and tenements; for the words "lands and tenements" have always, in Maryland, been understood to refer to the legal estate; and such has always been the construction given to the words "lands, tenements, and other hereditaments, and real estates," in the English statute of 5 Geo. II. c. 7, § 4, which are full as broad as the words "lands and tenements." They have, as we have seen, never been construed, in Maryland, as extending to an equity of redemption. The words "rights and credits" mean legal rights and credits only; such as might be attached and condemned under the attachment laws; not mere equitable claims or interests. But the third section of the act of March 1, 1823, does not authorize the justice who rendered the judgment to issue the execution; it authorizes any other justice to issue it upon a copy of the judgment. It is the 13th section of the act which gives power to a justice to issue execution upon his own judgment; and that section has no allusion to the executions formerly issued by the clerk; it adds nothing to the ordinary effect of a fieri facias at common law, and it expressly excepts certain articles from seizure. The 9th section gives the justice power to issue a ca. sa. or fi. fa. upon a supersedeas, (which is a judgment confessed by the debtor, with a surety, payable in six months,) which was the case here; and this section also has no reference to the executions formerly issued by the clerk, and adds nothing to the common-law effect of a fieri facias. The 3d section declares that "no judgment rendered before a justice of the peace shall have the effect to create any lien upon real estate." The reason of this provision, no doubt, was the difficulty of ascertaining the extent of such incumbrances from the judgments of twenty or thirty individual magistrates, whose memorandums, or even docket-entries, are not matter of record, and are liable to be lost; and no purchaser of land in the District

could be sure that it was free from incumbrance. When the magistrates were bound to certify all their judgments to the clerk of the court, and when all executions issued from his office, there could be no difficulty, as that office would, at once, furnish all the necessary information. Executions issued by justices of the peace, and levied upon lands, are liable to the same objection. They are made returnable to the justice, and nothing more is heard of them. They are not matter of record, and if returned, are liable to be lost; and before a title can be certified to be good, the files of every justice in the county must be examined. No deed is necessary from the officer who levies the execution, and makes the sale. The legal estate is vested in the vendee, by operation of law. Boring's Lessee v. Lemmon, 5 Har. & J. 223. The spirit of the act of March 1, 1823, is therefore against extending the operation of a magistrate's execution beyond its legal common-law effect, which I think is limited to the sale of legal estates and legal interests.

The fieri facias, in the present case, was issued upon a supersedeas, and must, therefore, have been issued by virtue of the 9th section of the act, which simply authorizes the magistrate to "issue execution by way of capias ad satisfaciendum or fieri facias against the principal debtor and his sureties, or against either of them, after the expiration of the time so mentioned in the said supersedeas." There is nothing, in this section, added to the common-law effect of the fieri facias. The only power given, is "to issue execution by way of capias ad satisfaciendum, or fieri facias." I am, therefore, of opinion that the execution and proceedings in the case of Van Ness against Shields, did not in any manner affect the equity of redemption which Shields had in the mortgaged premises; and that he had a good right to assign it to Mr. Hyatt on the 9th of May, 1825. If the equity of redemption was not affected by that execution, a fortiori the right to purchase the fee-simple within the ten years, which was a mere covenant-right, could not be affected. Mr. Hyatt had completed his title in fee before Mr. Van Ness filed his bill, and the fact, that he was a judgment-creditor, gave him no lien or priority to redeem the term, or to purchase the fee-simple, as against Mr. Hyatt, who was a bona fide purchaser for a full and valuable consideration without notice of that judgment. Whether he had, or had not notice, however. I deem to be of no importance. I am clearly of opinion that the bill ought to be dismissed with costs.

MORSELL, Circuit Judge. This is the case of a bill filed to redeem a mortgage of a leasehold estate; the complainant claiming a right to redeem as a creditor, by judgment, and under a sale by fi. fa. against the mortgagor. The facts to show the ground of the right, in substance, are: That on the 31st of December, 1818, William Cocking leased to James Shields, part of lot 12, in square 406, in the city of Washington, for ten years from the 1st of January, 1819, at $35 a year, clear of taxes, &c., and to build a two-story brick house thereon within twelve months, with leave to purchase the fee-simple at the end of the ten years, by paying $375 and all arrears of rent. This lease was duly acknowledged, but never recorded. Shields built the two-story house according to the contract. On the 23d of April, 1823, Shields mortgaged the house and lot to John Franks, to secure a debt of $1,127.18, to be paid on the 31st of December, 1828. On the 8th of November, 1823, Van Ness, the complainant, obtained a judgment against Shields for $28.40 debt, and $1.27 interest, and fifty-eight cents costs, rendered in his favor by a justice of the peace, which judgment was superseded. On the 10th of June, 1824, a fi. fa. was issued upon the judgment, by a justice of the peace, which was levied by Botelor, the constable, upon the lot of ground above described as then in possession of and occupied and held by said Shields, for all the right, title, interest, and claim of said Shields, (particularly describing the premises.) On the 10th of July, 1824, after due notice being given of the same, he, said Botelor, exposed the same to public sale, with the improvements thereon, that is, all the right, title, estate, interest, and claim of him, the said James Shields, therein, so as aforesaid taken in execution on the said writ. John P. Van Ness became the highest bidder and purchaser for $54, and has since paid the purchase-money. On the 19th of August, 1825, Botelor, as constable, made his deed to Van Ness, reciting all these circumstances, and conveying the said premises and interest to Van Ness, which are, by the admission of counsel, agreed to be true; which deed was duly recorded, &c. On the 7th of May, 1825, Franks assigned his interest in the mortgage to Alpheus Hyatt, for a valuable consideration. On the 9th of May, 1825, Shields assigned to Hyatt all his equity of redemption, in consideration of $200. Cocking died seized of the reversion, in fee-simple, which descended to his two daughters, Ann Blanchard and Jane Glover; who, on the 16th of April, 1826, assigned to Hyatt all their right as heirs at law of the lessor, William Cocking, for a valuable consideration. The bill states that a negotiation had taken place between the complainant and the said Cocking in his lifetime, upon the subject of paying the sum of money agreed on for the fee, but this is denied, and there is no proof of the fact, that it was continued afterwards with Charles Glover, who married one of the heirs of Cocking; and the correspondence, marked Exhibits 2 and 3, are filed to prove it, which I think they do prove. It also charges notice of the judgment, fi. fa., and sale, by Hyatt before his purchase of the equity of redemption of Shields; and although the fact of personal notice is not admitted in the agreement of counsel, yet the circumstances are so strong to prove it, that the conviction cannot easily be resisted. The public notice given of the

sale, the publicity of the sale itself, and the other circumstances in the case, seem to me abundantly sufficient to preserve any rights which Van Ness might have had against a subsequent purchaser of the redemption. The bill also charges "that he has been always ready and willing to redeem the same, and to pay the said sum of $375 with interest and arrearages to said Cocking and his representatives, and to pay to the said Franks in his lifetime, and his representatives since his death, the amount really due of said consideration-money in the mortgage to him from Shields, and is now ready and prepared so to do; but that they have refused." &c. The case as to the amount claimed, is not of much importance, but the principles, upon which a correct decision must rest, are of very great interest and difficulty. As to the interest which Shields took under the unrecorded deed, there is no difference in opinion between the Chief Judge and myself; that it was a good lease for seven years, or rather that it gave him a legal interest in the property for seven years, and an equitable interest for the residue of the ten years, together with rights, under the covenant, to the fee, which a court of chancery would enforce. I shall, therefore, say nothing more on that point. Shields, then, according to the facts in the case, at the time Van Ness obtained his judgment, and caused his fieri facias to be put into the hands of the officer, held the equity of redemption in the unexpired part of the term; was in the actual possession and occupation of the premises; and also had, by the condition in the mortgage, an unexpired period of time till the 31st December, 1828, to pay the money, and save the forfeiture; with the further right, secured to him by covenant upon payment of the sum mentioned in the lease, of purchasing the fee.

In the objections, offered to the recovery in this case, it has been supposed that the principal question in the case was, whether an equity of redemption, in a term of years, could be seized, appraised, and sold under a fi. fa. issued on the judgment of a single magistrate, and which, so far as this question is concerned, is supposed to be like any other common-law judgment. I think the real question in the case, is, whether Van Ness, the complainant, in virtue of his judgment and fieri facias, and sale under it, is not such a creditor and legal assignee as to be entitled, against the defendant, a subsequent purchaser of the equity of redemption, to the preferable right to redeem, and to the benefit of the covenant for the purchase of the fee, as an incident to the leasehold interest. I will, however, offer my thoughts upon the question, whether an equity of redemption in a term for years, can be seized, appraised, and sold under a fieri facias. A great number of English authorities have been referred to, for the purpose of proving that it cannot be done in England. I agree that it is so settled in England; the reason,

assigned by the English authorities, is, that the fi. fa. is a common-law process; that the language of these writs and return, imports that the goods and chattels which are the subject of them are properly of a tangible nature, capable of manual seizure, and of being detained in the sheriff's hands and custody, and such also as are conveniently capable of sale and transfer by the sheriff to whom the writ is directed, for the satisfaction of a creditor. The legal interest in a term of years, both in respect of the possession of which the leasehold property itself is capable, as also in respect of the instrument by which the term is created and secured, both of which are capable of delivery to a vendee, has been always held to answer the description of the writ, and to be salable thereunder; but no single instance is to be found in the history and practice of the courts of common law, in which an equitable interest in a term of years has ever been recognized as salable, (seizable, of course, it cannot be) under a fieri facias. When this distinction was taken between a legal and equitable interest in lands, and the principle established, it was at a very early period; and when their courts decided that "an equity of redemption was nothing in the eye of the law." See 2 Wils. 86. It is not wonderful, when such was the view, that they should think it was not tangible; could not be seized and sold; but since that day the law of mortgages in England has undergone, (perhaps,) a greater change than the law on any other legal subject; almost total. It is not deemed necessary to trace particularly the change as to time or in all the particular instances. One or two shall be stated, which will show that I am not mistaken. To tenant by the curtesy, Lord Coke says, (and such is now the law,) four things are requisite to give an estate by the curtesy, namely, marriage; seizin of the wife; issue; and death of the wife. Yet it is a principle as well settled as any other in England, that a husband is entitled as tenant by the curtesy, to an equity of redemption. Again, in a very modern case of settlement, decided by one of the most enlightened judges that ever sat on the English bench, I mean Lord Mansfield, in stating the law on the subject, he says, "If the estate on which a pauper resides, is substantially his property, that is sufficient, whatever forms of conveyance there may be; and therefore a mortgagor in possession gains a settlement, because the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only security. It is an affront to common sense to say the mortgagor is not the real owner." If, then, such is the character and interest of the mortgagor, the reasons for the principle no longer exist. There is, however, still felt strange veneration for an old principle which has nothing, at this day, but the most naked, sheer form left to support it. As to its not being tangible and capable of manual seizure, I think I

have shown enough to prove there is but little, if any, force in the objection.

In the language of a learned judge in Maryland, "the right itself, whether legal or equitable, is not tangible;" but the land is; and, by the sale, the interest of the party, either legal or equitable, may well pass; and if the party in possession will not give it up, the purchaser is driven to his ejectment; and if only equitable, to get possession he may resort to a court of equity, where, if the sale under the fieri facias passed the right, he would not only obtain the possession, but the legal estate also. Would it not be highly unjust that a debtor, in possession of, and using and enjoying the property as owner, under cover of such a sheer form, should be sheltered from the remedy of his creditor, awarded to him by the law as a means to realize the fruits of his judgment. However it may be in England, this empty form has not been regarded as a sufficient objection by the courts of this country, with the exception of some few of the states, amongst whom I shall endeavor to show Maryland is not one. It will appear, from decided cases, that Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, South Carolina, and Ohio, have determined that an equity of redemption may be sold under a fieri facias. It is said that those states have particular statutes on the subject, authorizing it. Whether this is so or not I cannot tell, having no opportunity of examining their statutes; but so far as I have ascertained, they are considered as only declaratory of what the law was before. But, how was the law of Maryland as it existed on the 27th of February, 1801? It is supposed, that in no case had the courts of Maryland ever decided that an equity of redemption could be sold under a fieri facias. On the contrary, that the two acts of 1794 (chapter 60) and 1810 (chapter 160) show what the law of Maryland was before, namely, that an equitable estate or interest in land could not be seized and sold under a fieri facias. I have very much misunderstood the course of legal decisions in Maryland, if their courts have not, in effect, held that such an interest was subject to a fieri facias. The act of 5 Geo. II. c. 7, which passed in the year 1732, made houses, lands, negroes, and other hereditaments and real estate liable to the payment of all debts; and subject to the like remedies and proceedings in any courts of law or equity that personal estate were. I can perceive nothing in the terms of this law, that necessarily confines the remedies to cases only of strictly legal interests in lands. The terms hereditaments and real estate are very comprehensive. It is such an interest as will descend and may be inherited by the heirs at law; and may be bargained and sold by the mortgagor. The court has decided that the mortgagor of shares in an incorporated insurance company, was entitled to vote on them, and in some other cases, I think, that the mortgagor is considered as the real and substantial owner. As to the inference which has been drawn from the acts of 1794 and 1810, I think it will appear to be incorrect, and that their provisions were principally intended to affect equitable interests only in lands existing in contract and choses in action only,—a distinction which I admit to exist. The first act is intended to enlarge the powers of the high court of chancery, and the powers given are nothing more than such a court had before as to cases of equity of redemption. So with respect to the act of 1810; it was designed to remove all doubts as to the cases of equity of redemption, and to extend it to all other equitable interests. To justify the inference drawn from those two statutes it must be supposed, that there is no difference between an equity of redemption with actual possession, in which the party has bargained and sold his legal interest conditionally, and other equitable interests or claims in land by contract or chose in action only and where he never had the legal interest. I think otherwise. I have never supposed that a fieri facias could be levied upon a mere chose in action. This, I agree, would be such an incorporeal hereditament as could not, without the provisions of the statutes, be affected by a fieri facias.

I will now refer to the Maryland authorities, or as many of them as I have been able to meet with, and I think it will appear from them that I am fully borne out in the position I have laid down. The first is the case of Campbell v. Morris [3 Har. & McH. 557], in 1797. In this case the question was raised and fully argued by the most eminent lawyers at the bar of the general court, whether an attachment, which was a common-law process, could be levied upon an equity of redemption in lands, and it was very ably argued and shown that there was no distinction, as to this matter, between an attachment and a fieri facias. The court of appeals of Maryland decided that it might be done, and ordered condemnation; on which judgment a fieri facias was taken out, and the lands seized and sold, and Campbell became the purchaser. He afterwards filed his bill to redeem, in this court, which was opposed by some other who claimed to have the right; and an appeal was prosecuted from this court's decision, to the supreme court, where the same question was raised and decided. Judge Johnson, in delivering the opinion of the court, says: "Campbell claimed as a purchaser at sheriff's sales under an attachment of the interest of the mortgagors, filed his bill for redemption, and the court decreed that he be permitted to redeem on payment," &c. The attachment was levied on the equity of redemption existing in those mortgagors; and the decision of this court, in supporting his rights, was placed upon the decision of the courts of Maryland (in which the land then lay) which maintained the validity of an at-

tachment levied upon an equity of redemption. In this case, it will be observed, the process of attachment was a common-law process; the judgment of condemnation was a common-law judgment, and the fieri facias was also such. The supreme court say that a fieri facias, issuing on such a judgment, may be levied on an equity of redemption, and a valid sale may be made under it; and that the purchaser, in virtue thereof, is to be considered such an assignee of the equity of redemption as to be entitled, on a bill filed, to redeem. If it be objected, however, to this case, that it is not authority for the proposition as generally laid down, because of the comprehensive terms used in the attachment-statute, yet the objection will not hold as to the particular case before the court, as it will hereafter be shown, when the terms used in the two statutes are to be compared. It will then appear to be a full and conclusive authority.

The next which I will refer to is the case of Purl's Lessee v. Duvall, in Prince George's county court, decided in 1820; reported in 5 Har. & J. 69. The case was an action of ejectment brought in the county court by Purl against Duvall, in which the question was made to the court, "When the judgment was obtained under which the land was sold, there was no deed for the land vesting a legal title in Purl, who had no interest therein until two years after the return of the fieri facias under which the land was seized and sold;" in other words, the defendant, in the case in which the fieri facias had issued, had, at the time, only an equitable interest in the land which was seized and sold under the fieri facias. The plaintiff prayed the court to direct the jury that the evidence so offered by the defendant, (which was his judgment, fieri facias, sale under it, and deed from the sheriff, of an equitable interest,) was not sufficient to sustain the issue on his part; and that the title by him set up under the judgment and the proceedings under the same, the sale of the sheriff, and the deed executed by him to said defendant, is not a good and valid title in law; which opinion the court, (Johnson, C. J., Key, and Plater, A. J.,) refused to give; but on the contrary were of opinion, and so directed the jury, that the plaintiff, on the preceding facts, if found to be true by the jury, was not entitled to recover. The fieri facias, in the case above recited, was laid in the year 1806, so that it was not even pretended that the act of 1810 had any bearing on the question made in the case. This case was carried up to the court of appeals, but went off, in that court, upon some other point. The decision of the county court was not disturbed, so that I think it cannot be denied that this is an authority on the very point. The judge who delivered the opinion of the court, was, at that time, one of the judges of the court of appeals, and afterwards made the chancellor of the state. He stood, deservedly, very high as a judge.

The next case which I will refer to, and the last, is the case of Ford v. Philpot, 5 Har. & J. 313, decided in 1821. In this case the question is made: "How far the interest which a mortgagor had in lands, mortgaged by him, was, before the acts of 1795 and 1810, liable to be attached, condemned, and sold, under a fieri facias." The same learned judge, Johnson, in delivering the opinion of the court, after stating that the mortgagor is considered the substantial owner of the property mortgaged, that the debt due is all the mortgagee and those claiming under him can demand, and that the legal estate is in the mortgagee merely to secure the payment of the debt, and, that effected, the mortgagor must be restored to his original condition, the unfettered owner; that there is no necessity to detail the extent of the interest of the mortgagor after the time limited for the payment of the debt has elapsed; he says, "It may suffice to say that, except no right of dower can arise (and for this exception no substantial reason can be given, and no longer exists,) on the mortgagor's interest, he is capable of transferring or vesting his interest at his own pleasure; nor can he be deprived of this capacity so long as the right of redemption exists." Again, in another part of the same opinion, he says, "It appears, in itself, but just, that the interest, which a mortgagor has in the property mortgaged by him, should be liable, as well at law as in equity, for his debts; and there appears no force in the objection, that it is not at law subject to a fieri facias because it is not tangible; for the fieri facias itself, whether legal or equitable, is not tangible; but the land is;" &c., as I have quoted from him in another part of this opinion. In closing his opinion, he further says, "that whatever interest Ford had, to the land, passed from him by the attachment, condemnation, and sale; and, of course, when his representatives filed the present bill, they had not the redeeming power vested in them." And now, lastly, may not the same thing be said of the equity of redemption, in this case, even if it should be thought I am incorrect as to the general question, which I think I have sustained, that an equity of redemption of lands, where the mortgagor is in possession, before foreclosure, may be affected by a fieri facias on a judgment obtained by a creditor.

The judgment, in the present case, was a magistrate's judgment, and the fieri facias issued thereon under the act of congress of 1812, § 15 (2 Stat. 755). That section is in these words: "That upon a fieri facias issuing out of the office of the clerk of the county of Washington, upon the judgment of a magistrate, the plaintiff, upon such fieri facias, shall be entitled to have his execution against the goods and chattels, lands and tenements, rights and credits of the defendant." The words of the attachment law are, "the lands, tenements, goods, chattels and credits"—so that upon a comparison of these two laws, the terms are almost identical; if any difference, the words of the act of congress are more comprehensive. I should really think that after the numerous

judicial decisions, both in the state court and United States court, in giving the proper construction to those terms, and so extending them as to include an equity of redemption in lands, expressly, there could be no need for me to say another word. It is true, the act of congress, so far as it directed the execution to be issued out of the office of the clerk of the county of Washington, has been repealed, but I think the justice of the peace who is now authorized to issue instead of the clerk, is authorized to issue the same kind of execution, and with the same comprehensive effect as to the subjects. In 8 East. 485, the judge, in delivering the opinion of the court, says: "But the inconvenience in the case put," (in case an equity of redemption could not be sold under a fieri facias,) "does not extend beyond the necessity which such a step would occasion of resorting to a different remedy, to be applied in another court, by a bill to be filed by a judgment creditor, in such other court, for the purpose of obtaining it. In a court of equity he might be let in to redeem such mortgage incumbrances as stood in the way of his common-law remedy by execution; or he might have a decree for the sale of the mortgage term itself, in satisfaction of his rights as an execution creditor. 3 Atk. 200, 739." So in 4 Johns. Ch. 692, Chancellor Kent says: "It may be laid down as a rule of equity, that an execution creditor at law has a right to come here and redeem an incumbrance upon a chattel interest, in like manner as a judgment creditor at law is entitled to redeem an incumbrance upon the real estate, and the party, so redeeming, will be entitled, in either case, to a preference according to his legal priority." I am, therefore, brought to this conclusion: That the complainant, Van Ness, by the judgment, fieri facias, and sale, and purchase under it, of the equity of redemption of Shields, of the unexpired part of the term, became the legal assignee thereof, and of all the equitable interests of Shields, as incident to and connected with, his leasehold interest in the land; and that he is entitled to his decree accordingly. I do not think the defendant, Hyatt, can reasonably object to want of notice. I think he had all the notice Van Ness was bound to give.

CRANCH, Chief Judge. It has been before observed, that "in no case had the courts of Maryland, before the 27th of February, 1801, ever decided that an equity of redemption could be seized and sold under a fieri facias." But, it has been suggested, that the course of legal decisions in Maryland will show that their courts have, in effect, held that such an interest was subject to a fieri facias; and the cases cited for that purpose, are those of Campbell v. Morris, decided in the general court of Maryland, and in the court of appeals in Maryland in 1797, and in the supreme court of the United States in 1815; Purl's Lessee v. Duvall, in the county court of Prince George's county, in Maryland, in 1820; and Ford v. Philpot, in the court of appeals of Maryland in 1821. The

case of Campbell v. Morris, is reported in 3 Har. & McH. 557, as it appeared in the general court, and in the court of appeals. The general court, which, at that time, was supposed to be at least fully equal to the court of appeals in legal learning and talent, was clearly and decidedly of opinion that an equitable interest could not be attached; and the court of appeals, although they reversed the judgment of the general court, who quashed the returns on the writs of attachment, gave no reasons for the reversal; but from the argument of Mr. Shaaff, who was counsel of Mr. Campbell, the attaching creditor, and the letter from Judge Rumsey, the chief judge of the court of appeals, to Mr. Morris's counsel (see Pratt v. Law, 9 Cranch [13 U. S.] 476), it appears that the judges (excepting the chief judge himself,) thought the covenant for quiet enjoyment was a lease for years to the mortgagors, and gave them a legal estate which was attachable; and they gave no opinion upon the question whether an equity of redemption was liable to attachment. The authority of that case, therefore, is decidedly against the principle for which it was cited. In the case of Pratt v. Law, 9 Cranch [13 U. S.] 496, where the same question was raised upon the same attachment, the supreme court say: "Much ability has been exhibited in argument on the question whether an equitable interest, in lands and tenements, be the subject of attachment under the laws of Maryland. But we are of opinion that we are not now at liberty to enter into the consideration of that question. The decision of the court of appeals is final and conclusive on this point. The question was finally brought before them; and although it had not fixed the law, would have fixed the fate of these lands beyond reversal. Some doubt is entertained by one member of the court, whether the laws of Maryland go further than to authorize the condemnation of this interest to satisfy the judgment, so as to leave the plaintiff still under the necessity of applying to an equitable tribunal to effect a sale. But the majority are of opinion, that the attachment act, in making the interest tangible, makes it subject to the ordinary process of the law courts; and that, in vesting in the courts in which the condemnation takes place, the power to issue execution as in cases of other judgments, it has left with those courts so to fashion its process as to meet the exigency of each case. In this case the very special nature of the execution shows that it has been fashioned with great care and learning. We therefore hold the sale under this execution to be valid." Here it is evident that the doctrine of the liability of an equity of redemption to condemnation under attachment in Maryland, receives no additional sanction from the supreme court of the United States. who expressly disclaim the consideration of that question, considering it as settled, in regard to that case, by the court of appeals of Maryland. But if the case of Campbell v. Morris could be considered as having settled the law of Maryland upon that question, (which

I think it could not,) yet that was a case of attachment and condemnation; not a simple case of fieri facias under an ordinary judgment. The process of attachment was given for the purpose of enabling a creditor to get at property which he could not affect by the ordinary process of law, and it creates a lien from the time of service of it. It authorizes a condemnation of the property attached, and a fieri facias of the property condemned. The act of 1795, c. 56, authorizes an attachment of the lands, tenements, goods, chattels, and credits, of the debtor. The common writ of fieri facias commands the sheriff to make the money of the goods and chattels of the debtor: and until the statute of 5 Geo. II. c. 7, in the year 1732, lands in Maryland were never sold under a fieri facias. Previous to that statute. lands could only be extended by elegit, as they are now in Virginia. See Kilty's Notes on that statute, page 249. The statute 5 Geo. II. c 7, § 4, provides "that houses, lands, negroes, and other hereditaments and real estates in the plantations, belonging to any person indebted, shall be liable to and chargeable with all just debts, duties, and demands, of what nature or kind soever, owing by any such person to his majesty or any of his subjects. and shall and may be assets for the satisfaction thereof, in like manner as real estates are, by the law of England, liable to the satisfaction of debts due by bond or other specialty, and shall be subject to the like remedies, proceedings, and process, in any court of law or equity in any of the said plantations respectively, for seizing, extending, selling. or disposing of, any such houses. lands, negroes, and other hereditaments and real estates, towards the satisfaction of such debts, duties, and demands; and in like manner as personal estates, in any of the said plantations respectively, are seized, extended, sold or disposed of, for the satisfaction of debts." "Soon after this statute became known in the province, (says Mr. Kilty,) "the practice began of selling lands under writs of fieri facias, and the remedy by elegit ceased to be used." The writ of fieri facias was, therefore, in Maryland. extended to houses. lands, negroes, and other hereditaments and real estates; but there is no evidence that any other than legal estates could be seized and sold under a fieri facias, or that the common law of England, upon that subject, which had prevailed in Maryland before that statute, was thereby altered in that respect. The thing itself was to be sold, not a chose in action, nor an equitable conditional right to claim the thing. Under the attachment law, a chose in action might be attached, condemned, and perhaps sold, under a special fieri facias founded on the condemnation: but an equity of redemption is not provided for under that law; and if it were, it does not follow that it, any more than any other chose in action, could be sold under a fieri facias, without a previous attachment and condemnation." If, therefore, we were to admit that the court in the case of Campbell v. Morris. decided that an equity of

redemption was liable to attachment, it does not follow that it can be sold under a fieri facias without attachment. But I do not by any means admit that case to be an authority for that point; because, as before observed, Mr. Campbell's counsel, Mr. Shaaff, contended that the covenant, on the part of Mr. Law, contained in the mortgage, that Morris, Nicholson, and Greenleaf, should remain in possession until default made in the condition, gave Morris and Nicholson a legal estate for years which could be condemned and sold; and the chief judge of the court of appeals states, expressly, that the judgment of the general court was reversed on that ground, and that the court gave no opinion upon the question whether an equitable interest was liable to attachment; so that the opinion of the general court, which was full and decided upon that point, stands unreversed.

The next case cited to prove that the course of legal decisions in Maryland will show that their courts have, in effect, held that such an interest was subject to a fieri facias, is Purl's Lessee v. Duvall, in Prince George's county court, reported in 5 Har. & J. 69–74, and decided in 1820, nineteen years since this District was separated from Maryland, and upon a transaction which originated long after that separation. The case appears to be this: Purl had contracted to purchase of Magruder one hundred acres of land, being part of a tract called "Magruder's Plains enlarged," and was probably put in possession without any legal title. The purchase-money not having been paid according to agreement, Magruder brought a suit at law against Purl, and at September term. 1806, obtained a judgment for seven hundred and twenty dollars, upon which, after two ca. sa.'s entered, "not called, by consent." and the payment of three hundred and forty dollars, a fieri facias was issued on the 7th of December, 1807, which was returned in April, 1808, "made to the amount of two hundred and fourteen dollars and seventy-two cents laid, as per schedule; for residue, not sold for want of buyers." Notley Maddox was then the sheriff. The schedule contained part of a tract or parcel of land called "Magruder's Plains," containing eighty-one acres. Nothing further was done until the 4th of June, 1810, when Magruder, having been, perhaps, advised that a mere equitable title could not be seized and sold under an ordinary writ of fieri facias, conveyed the legal title in fee to Purl, and thereupon on the 17th of September. in the same year. 1810, took out a venditioni exponas, commanding the sheriff to expose to sale the eighty-one acres of "Magruder's Plains," upon which he had levied the fieri facias in 1808. This venditioni exponas was directed to Notley Maddox, late sheriff, &c., (one Darnal having, in the mean time, been elected sheriff of the county,) and at April term, 1811, was returned "not sold for want of buyers." On the 23d of June, 1812, another writ of venditioni exponas was issued returnable to September term, 1812.

and directed "to the sheriff of the said county." This writ was returned "made," by Darnal, the then sheriff, who sold the land to Duvall. Purl, thereupon, brought his action of ejectment, and at the trial the defendant relied upon his title thus obtained by the sheriff's sale after the legal title had been thus conveyed to Purl by Magruder. Whereupon Purl prayed the court to direct the jury that the evidence so offered by the defendant was not sufficient to sustain the issue on his part; and that the title by him set up under the judgment and the proceedings under the same, the sale by the sheriff, and the deed executed by him to said defendant, is not a good and valid title in law. Which opinion the court refused to give, and directed the jury that the plaintiff, on the facts stated, if found to be true by the jury, was not entitled to recover. Purl appealed to the court of appeals. Mr. Stephen, the counsel of the appellee, said: "There are two questions in this case: (1) Whether an equitable interest in land taken in execution under a fieri facias, can be sold under a venditioni exponas, the legal title having been acquired in the mean time. (2) Whether, if the land was levied upon and advertised as 'Magruder's Plains,' and sold and conveyed as 'Magruder's Plains enlarged,' the defendant in the judgment and execution can avail himself of this objection in an action of ejectment?" Mr. Justice Dorsey, in delivering the opinion of the court of appeals, (after observing that the following points were made, namely: (1) That the return of the fieri facias was too uncertain as to the description of the land. (2) That the plaintiff's lessor, at the time the fieri facias was laid, had only an equitable interest in the land. (3) That Darnal had no power to sell the property which had been levied upon by his predecessor, Maddox,) said: "The court do not deem it necessary to give any opinion on the first and second points, because they are of opinion that Darnal had no authority to execute the writ of venditioni exponas." At the time of levying the fieri facias, Purl had only a bare equitable claim to the land, upon paying the purchase-money. The argument, drawn from the nature of a mortgagor's interest, does not apply to this case. Such a naked equity had never been adjudged, in Maryland, to be liable to be seized and sold under an ordinary writ of fieri facias. The counsel of Magruder seems to have been aware of this, for he did not venture upon a sale under the fieri facias until Magruder had conveyed the legal estate to Purl, by the deed of the 4th of June, 1810, more than two years after the execution was levied. That the conveyance of the legal estate to Purl, before the sale, was deemed a very important fact in the cause, appears by Mr. Stephen's statement of the questions which would arise in the argument; and there can be little doubt that it was the fact which mainly induced the county court to refuse the instruction to the jury, prayed by the plaintiff's counsel. This case, therefore, does not seem to me to afford any evidence that the course of legal decisions, in Maryland, will show that their courts have, in effect, held that such an interest, that is, an equitable interest, was subject to an ordinary fieri facias, even as late as 1808, much less before 1801.

The next and last case, cited for that purpose, is that of Ford v. Philpot, reported in 5 Har. & J. 315, and decided by the court of appeals in Maryland, in 1821. The case appears to be as follows: In 1754 certain lands were mortgaged by Ford to Larsh, or to some person under whom he claimed. Ford, the mortgagor, and those claiming under him, remained in possession until 1789, when Larsh obtained a judgment against him on his bond given for the money due on the mortgage, and after two non ests, took out an attachment under the act of 1715 (chapter 40), and attached the mortgaged lands then in possession of the mortgagor, which were condemned and sold under the fieri facias issued upon the judgment of condemnation, and bought by one Hughes, who purchased of Larsh all his right as mortgagee, and then sold the property to Philpot, the defendant. Ford, or those claiming in his right, brought his bill in the court of chancery in Maryland, where the chancellor decreed that he should be permitted to redeem by a certain day, upon paying up the mortgage money, and for certain improvements which had been put upon the land by Hughes or Philpot; and that if he did not so redeem, by the day, the bill should be dismissed. He refused to redeem on those terms; the bill was dismissed, and he appealed. This case, therefore, was upon an attachment and condemnation, in 1789. The plaintiff, Larsh, who obtained the original judgment against Ford, might have issued a fieri facias directly upon that judgment; and if an equity of redemption was, by law, liable to be seized and sold under an ordinary fieri facias, his remedy would have been as complete as if the right had been attached and condemned. But it seems his counsel did not think proper to risk it upon an ordinary fieri facias, and proceeded by way of attachment and condemnation; so that the case affords a strong presumption that the lawyers of that day were of opinion that an equity of redemption, even where the mortgagor remained in possession, was not liable to seizure and sale under an ordinary fieri facias; and Judge Johnson, of Maryland, who delivered the opinion of the court of appeals, after stating that the mortgagor is now considered as the owner of the property, against all the world, except the mortgagee, and liable to all the incidents of a legal estate, except dower, says: "The property mortgaged is substantially his, liable to the incumbrance of the debt. Subject to that responsibility, he can sell it, to meet any other claims or demands, to whom he pleases; and without his permission, and against his will, it may be withdrawn from him, in discharge of his debts, by a decree

and sale under the authority of a court of equity; and since the year 1810, it is expressly made responsible, at law, for his debts, as well as any other equitable interest a debtor may be entitled to. But was it susceptible of being taken under the attachment in the year 1789, and could it be disposed of under the fieri facias? If it be conceded, that, in England, the right of redemption cannot be taken in execution and sold by a fieri facias, that is, the equity of redemption in chattels real; and that, before the year 1810, in this state, a fieri facias, on mere common-law judgments, would not reach such property; yet it will not follow that it may not be approached, or made liable by attachment. There are no words or expressions in the attachment law of 1715 (chapter 40), confining its operation to such property as could be affected by fieri facias on ordinary, or common-law judgments. Its language is, 'to award an attachment against the goods, chattels, and credits.' By what process of law could the credits of a judgment debtor be affected? The writ of fieri facias could not meet them; and if they could be made responsible, the aid of a court of equity must be solicited; and when the act caused one interest to be affected at law, it is not presumed that any reason exists for excluding any other property, belonging to the debtor, from the same liability." Again, he says: "It appears, in itself, but just, that the interest which a mortgagor has in property mortgaged by him, should be liable, at law, as well as in equity, for his debts; and there appears no force in the observation, that it is not, at law, subject to a fieri facias, because it is not tangible; for the right itself, whether legal or equitable, is not tangible; but the land is; and, by the sale, the interest of the party, whether legal or equitable, may well pass: if a legal interest, and the party in possession will not give it up, the purchaser is driven to his ejectment, and if only equitable, to get possession, he must resort to a court of equity, when, if the sale, under the fieri facias, passed the right, he would not only obtain the possession, but the legal estate also. And as it appears by the judgment of the court of appeals, in the case of Campbell v. Morris, 3 Har. & McH. 555, that the equity of redemption may be sold under an attachment issued in virtue of the supplementary act; and as the original and the supplement are the same, as to the property to be affected, and as the court are not, in the slightest degree, disposed to question the propriety of the decision made in the case mentioned, they are drawn to the conclusion that whatever interest Ford had, to the land, passed from him by the attachment, condemnation, and sale, and, of course, when his representatives filed the present bill, they had not the redeeming power vested in them."

This case of Ford v. Philpot seems to have been decided upon the authority of Campbell v. Morris, in which case it is certain that the court of appeals did not decide the question whether an equity of redemption would pass by the attachment, condemnation, and sale; and it is equally certain that the general court of Maryland, at that time an abler court than the court of appeals, decided clearly that it would not. The court of appeals only decided that Morris had a legal estate which might be attached, condemned, and sold. But giving the utmost force and extent to the cases of Campbell v. Morris, Pratt v. Campbell, and Ford v. Philpot, which have been claimed for them, and they do not affect the question whether an equity of redemption can be seized and sold under an ordinary fieri facias upon a common-law judgment. Neither before nor since the 27th of February, 1801, has that question been decided by the Maryland courts, in the affirmative, so far as my information extends; while all the cases which I have seen, bearing, in any degree, upon it, look quite the other way. Thus in the case of Purl's Lessee v. Duvall, 5 Har. & J. 69, although the plaintiff caused his fieri facias, in December, 1807, to be levied upon the land in which his debtor had only an equitable interest, he would not risk a sale until the summer of 1812, when the debtor had acquired the legal estate. I have never heard any one contend that such a bare equity as Purl had at the time of the levying of that fieri facias, was liable to seizure and sale under a common execution upon a common-law judgment. The only use of subjecting an equitable interest to execution at law is to give the plaintiff a lien prior to other creditors and to enable him to appropriate to himself those equitable assets which a court of equity would decree to be divided pari passu among all the creditors. To affect equitable rights, a creditor ought to be obliged to come into a court of equity which will compel him to do equity while asking it for himself.

Upon the whole, with all the light thrown upon this question by the cases of Campbell v. Morris, Pratt v. Campbell, Purl's Lessee v. Duvall, and Ford v. Philpot, I am confirmed in the opinion, that by the fieri facias and sale under the judgment in the case of Van Ness v. Shields, Mr. Van Ness did not acquire the right of redemption of the mortgaged property in the bill mentioned, and that the bill ought to be dismissed with costs.

THRUSTON, Circuit Judge, concurred. MORSELL, circuit Judge, dissented.

Bill dismissed with costs.

Decree affirmed by the supreme court, March 2, 1839. 13 Pet. [38 U. S.] 294.

VAN NESS (ROCKVILLE & W. TURNPIKE-ROAD v.). See Case No. 11,986.