RIGGS *v.* JOHNSON COUNTY.

After a return unsatisfied of an execution on a judgment in the Circuit Court against a county for interest on railroad bonds, issued under a State statute in force prior to the issue of the bonds, and which made the levy of a tax to pay such interest obligatory on the county, a mandamus from the Circuit Court will lie against the county officers to levy a tax, even although prior to the application for the mandamus a State court have perpetually enjoined the same officers against making such levy; the mandamus, when so issued, being to be regarded as a writ necessary to the jurisdiction of the Circuit Court which had previously attached, and to enforce its judgment; and the State court therefore not being to be regarded as in prior possession of the case.

ERROR to the Circuit Court for the District of Iowa.
The case somewhat fully stated was thus:
Statutes of Iowa enact:

That the county commissioners of any county may submit to the people of it at any election, the question whether the county will aid to construct *any road* which may call for extraordinary expenditure.

That when a question, so submitted, involves the borrowing of money, the proposition of the question must be accompanied by a provision to lay a tax for the payment thereof, in addition to the usual taxes, and *no vote adopting the question proposed* will be of effect unless it adopt the tax also.

That the county judge, on being satisfied that the above requirements have been substantially complied with, and that a majority of the votes cast are in favor of the proposition submitted, shall cause certain records to be made; after which the

vote and the entry thereof on the county records, *shall have the force and effect of an act of the General Assembly.*

That neither contracts made under propositions thus adopted, nor the taxes appointed for carrying them out, can be rescinded.

That money raised for such purposes is specially appropriated, and constitutes a fund distinct from all others in the hands of the treasurer, until the obligation assumed is discharged.

The questions, whether the foregoing statutory provisions authorized a county to aid in the construction of a *rail*road, and whether, if so, the legislature could, under the State constitution, confer such power upon counties, was adjudged in several decisions by the Supreme Court of Iowa in the affirmative. After these decisions, bonds were issued by several counties in the State, in aid of the construction of railroads. Subsequently to the issuing and negotiation of them, the Supreme Court of Iowa, on a review of their former decisions, overruled these decisions, and held that the above statute did not confer the power in question upon counties, and that the legislature could not constitutionally confer the power; and that bonds issued by the counties and cities of the State, in aid of the construction of railroads, were void.[*]

*This* court, however, in the case of *Gelpcke* v. *The City of Dubuque*,[†] and in other cases afterwards, refused to follow these later decisions of the Iowa court, and established, for the Federal courts, that the earlier Iowa decisions, affirming the power to issue the bonds, should be regarded as decisive of the question, as to all bonds issued while those decisions remained unreversed. Notwithstanding which, however, the State courts apparently considered bonds in like case still void.

While the State decisions, that the county *could* issue such bonds, were yet unreversed, the commissioners of Johnson County issued, in a negotiable form, a large number of coupon bonds, payable to bearer. The bonds recited on

---

[*] See the history set out in Gelpcke *v.* The City of Dubuque, 1 Wallace, 175.

[†] 1 Wallace, 175.

their face that they were issued under authority of the act of Assembly, and of the required vote, &c., and (as the fact was) that they had been issued by the county for stock in a railroad company specified.

Marcus Riggs having become the holder of several of them, brought suit and obtained judgment in the Circuit Court of the United States for Iowa; but execution being issued, it was returned *nulla bona*. There was nothing which by the laws of Iowa—where statutes exempt public property of a county and the property of the private citizen from being levied on to pay debts of a civil corporation—could be found to satisfy the execution. After this, various tax-payers of the county filed a bill in chancery in one of the State courts against the county commissioners (none of the bond-holders, however, being made parties to the proceeding or having notice of it), alleging that the bonds and coupons were void from the beginning, and had been repeatedly held so by the Supreme Court of Iowa, and praying a perpetual injunction to the commissioners against levying any tax to pay them: which injunction the State court granted. *After* the injunction upon this proceeding instituted in the State court had been issued, Riggs—by petition reciting his judgment, unsatisfied after execution, and the fact that it was obtained on the bonds such as above described, *reciting also the vote of the county to pay the tax*, and that it had the effect of a law—applied to the Circuit Court of the United States for a mandamus to the commissioners to compel them to lay a tax, "sufficient to pay the amount of the said judgment and cost and of the principal and interest falling due for each year on said bonds, and especially the interest warrants or coupons included in the aforesaid judgment, *and to continue the same from year to year, until the said bonds and coupons or interest warrants are fully paid*, in payment for the coupons or interest warrants annexed to said bonds, now due and unpaid, and not included in the aforesaid judgment, and of such coupons or interest warrants as they *shall* become due." The commissioners answered, making as return the injunction *previously* laid on them by the State court. Riggs demurred to the

answer, assigning four causes of demurrer, the substance of the one chiefly relied on, and considered here, being, that "after the judgment was rendered" in the Circuit Court, the State court had "no jurisdiction, power or authority" to prevent him "from using the PROCESS of this court by writ of mandamus to collect his judgment."

The Circuit Court overruled the demurrer, and judgment was given for the commissioners. The case was now here on error.

To better understand the argument it may be well to state—

1. That by an act of Congress (sometimes called the Process Act), passed, first in 1789, and improved and made permanent in 1792,* it was provided:

"That the forms of writs and executions, .... and the modes of process, in suits at common law, .... shall be the same in each State respectively as now used or allowed in the Supreme Courts of the States."

And by a later act† (May, 1828)—

"That writs of execution, and other final process issued on judgments rendered in the Federal courts, *and the proceedings thereupon*, shall be the same in each State as are now used in the courts of such State."

2. That in the Revised Statutes of Iowa (A. D. 1860), a mandamus is stated to be, and thus regulated under the head—

### ACTION BY MANDAMUS.

"§ 3761. An order of a court of competent jurisdiction commanding an inferior tribunal, corporation, board, or person to do or not to do an act, the performance or omission of which the law specially enjoins as a duty.

"§ 3762. That the plaintiff shall state his claim and facts sufficient to constitute a cause for such claim."

"§ 3766. That the *pleadings and other proceedings* in any *action*

---

* 1 Stat. at Large, 93; Id. 276.          † See 4 Id. 274; 5 Id 499, 789.

in which a mandamus is claimed shall be the same in all respects, as nearly as may be, as in an *ordinary action for the recovery of damages.*"

"§ 4181. That when the *action* of mandamus is by a private person there may be joined therewith the injunction of chapter 155, . . . . and the *action* shall be by ordinary proceedings."

3. That by the fourteenth section of the Judiciary Act,* it is enacted that Circuit Courts among others named—

" Shall have power to issue writs of *scire facias, habeas corpus*; and other writs *not specially provided for by statute*, which may be *necessary for the exercise of their respective jurisdictions*, and agreeable to the principles and usages of law."

4. That the same act, in the thirteenth section† enacts that—

" The Supreme Court shall . . . . have power to issue . . . . writs of *mandamus*, . . . . to any courts appointed or persons holding office *under the authority of the United States.*"

At the same time with the present case was another, *Thompson* v. *Henry County*, exactly like it in principle; the two being argued consecutively.

*Messrs. Fellows, Blair, Dick, Grant, Rogers, and Howell, for the relator, plaintiff in error, in the different cases:*

Since the cases of *Gelpcke* v. *The City of Dubuque*, and others after it, the Circuit Court of the *United States* for Iowa has uniformly sustained the validity of these county bonds, and numerous judgments have been recovered in it by the bondholders against various counties and cities of the State. On one of these judgments the present proceeding is founded, and the decision in this case is to settle the question, whether or not all these judgments, and all the bonds and coupons not yet in judgment, are, for any practical purpose, so much waste paper; that is to say, whether it is in

---

* 1 Stat. at Large, 81.                    † Id. 81.

the power of the Iowa State courts, not only to close their own doors against any remedy in behalf of the bondholders, but also to effectually defeat the collection of any judgments which the bondholders may recover on their bonds in the Federal courts, by the simple and easy process of perpetually enjoining the officers of the several counties and cities throughout the State from levying any taxes to pay the bonds or judgments recovered or to be recovered thereon (a process which amounts to enjoining them from *paying* such bonds and judgments) in suits brought for that purpose by tax-payers against the county or city officers, without making a single bondholder a party, or giving them notice. We submit that such a defence is in the face of all precedents in this court.

1. The jurisdiction of the entire case, existed in the United States court, from service of the writ of summons to appear and answer to the action, down to the actual execution of all process which the court might consider necessary to enforce its judgment; and therefore such jurisdiction covered the time when the proceedings in the State court were begun.

In *Wayman* v. *Southard*,* which involved the question, whether executions issued by the Federal courts could be controlled by State authority, the court, referring to § 14 of the Judiciary Act, say:

"The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be *satisfied*. Many questions arise on the process subsequent to the judgment, in *which jurisdiction is to be exercised*. It is, therefore, no unreasonable extension of the words of the act, to suppose an execution necessary for the exercise of jurisdiction. Were it even true that jurisdiction could technically be said to terminate with the judgment, an execution would be a writ necessary for the perfection of that which was previously done; and would, consequently, be necessary to the beneficial exercise of jurisdiction."

The court next proceeded to show that in the Process Act,

---

* 10 Wheaton, 1.

from the language used, it was the intention of Congress to provide for the entire proceedings in a case, down to the enforcement of the execution. They say:

"To the forms of writs and executions, the law adds the words, 'and modes of process.' These words must have been intended to comprehend something more than the forms of writs and executions. We have no right to consider them as mere tautology. They have a meaning, and ought to be allowed an operation more extensive than the preceding words.' The term is applicable to writs and executions, *but is also applicable to every step taken in a cause.* It indicates the progressive course of the business from its commencement to its termination."

In *The Bank of the United States* v. *Halstead*,[*] land in Kentucky had been offered for sale under execution from the United States Circuit Court, and as the State law would not permit it to be sold unless it brought three-fourths its appraised value, the United States marshal followed the State law, and returned the land not sold, because it did not bring that much.

But this court, in speaking of the power of Federal courts over its process, say:

"The judicial power would be incomplete, and entirely inadequate to the purposes for which it was intended, *if after judgment* it could be arrested in its progress, and denied the right of enforcing satisfaction in any manner which shall be prescribed by the law of the United States. . . . The general policy of all the laws on this subject is very apparent. It was intended to adopt and conform to the State process and proceedings as a general rule, *but under such guards and checks as might be necessary to insure the due exercise of the powers* of the courts of the United States. They have authority, therefore, from time to time, to alter the process in such manner as they shall deem expedient, and likewise to make additions thereto, which *necessarily implies a power to enlarge the effect and operation of* the process."

Having thus shown the possession of this power in the

* 10 Wheaton, 51.

courts, the next point settled was that it was beyond the interference of the State government.    Thus:

" If the court then had the power so to frame and mould the execution in this case, as to extend to lands, the only remaining inquiry is, whether *the proceedings on the execution could be arrested and controlled by the State law.*    And this question would seem to be put at rest by the decision in the case of *Wayman* v. *Southard. . . ."*

In *Peck* v. *Jenness,** this court say :

" It is a doctrine of law too long established to require a citation of authorities, that where a court has jurisdiction it has a right to decide *every question* which occurs in the cause; . . . and that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have ever attached, that right cannot be arrested or taken away by proceedings in another court.    These rules have their foundation, not merely in amity, but in necessity ; for if one may enjoin, another may retort by injunction, and thus the parties be without remedy, being liable to a process for contempt in one, if they dare to proceed in the other."

2. When the Circuit Court rendered judgment on the coupons attached to the railroad bonds, all questions involved in that cause, as between the relator, plaintiff there, and all parties liable on account of said bonds, became *res adjudicata.* One of the questions and the main question involved in that judgment, was the validity of the bonds; and it being determined therein, not only put the question at rest, but such decision was necessarily accompanied by the order, that the appropriate process of execution should issue.

3. Here then was nothing left undecided between the relator and the corporation of Johnson County, as to not only whether it ought, but should pay said bonds.    Nothing was left behind for the State court to act upon, when the parties

---

* 7 Howard, 612, 624; and see Abelman *v.* Booth, 21 Id. 515; Dodge *v.* Woolsey, 18 Id. 331.

began proceedings to stop the execution of the judgment of the United States court.

4. A writ of mandamus is simply *a process of enforcing the execution* of the judgment rendered in this cause. The Revised Statutes of Iowa show that mandamus is a remedy well known and much used in that State. If not a "writ" or "execution" within the old Process Act, it is yet a "mode of process," something regarded by that act as different from "writ" or "execution," but which is to give the creditor the fruit of his judgment. Or, if it be not "a mode of process," it is assuredly a "proceeding" upon a judgment, and within the act of May, 1828. If it be any one of these, we are entitled to use it through the Federal courts as it is used in the "courts of such State." It is moreover a "mode of process" or a proceeding which falls within the original understanding of the contracting parties. There has been a return of *nulla bona* to the execution. Taxation is the only means which can be relied upon, to meet the public obligations. Therefore the award of execution in the judgment, to be effectual, carries the writ of mandamus to oblige the county officers to raise the appropriate tax.

The case of *Knox County* v. *Aspinwall*,\* as it came the second time before this court, is in point. There the plaintiff having, in accordance with a prior decision on his case in this court, recovered judgment on railroad bonds, and the court determining that under the law of Indiana it was defendant's duty to levy a tax to pay the judgment, granted the mandamus, " *to enforce the execution of this judgment:*" and they decide, that this writ of execution is issued under the fourteenth section of the Judiciary Act of 1789, referring to the powers of the court under that act, as declared by the above-cited case of *Wayman* v. *Southard.*

The power of the United States court to issue a mandamus as a writ of execution was also and more lately decided in *Von Hoffman* v. *City of Quincy.*† There this court denied the power of the State legislature to withdraw the authority

---

\* 24 Howard, 376, 383.                    † 4 Wallace, 552.

which had been given to lay a tax, at the time the municipal bonds had been issued, on the ground, that the remedy being an essential part of the contract, could not be impaired in the slightest degree; and that it was the duty of the United States court to execute the process of mandamus, to enforce the remedy, notwithstanding the act of interference on the part of the State.

*Messrs. Thomas Ewing, Senior, of Ohio; Browning, Rankin, and McCrary, Strong, Farrall, and Boal, contra:*

1. The case of *Knox County* v. *Aspinwall,* which decided that circuit courts might grant a mandamus to enjoin State officers, is hardly, we submit, to be supported. This court is specially authorized, by the 13th section of the Judiciary Act, to issue " writs of mandamus, in cases warranted by the principles and usages of law, *to any courts appointed or persons holding office under the authority of the United States*"—not to courts appointed or persons holding office under the authority of the several States. Thus the writ of *mandamus* is " *specially provided for* by statute;" and it is limited to issue only to courts of the United States and *persons holding office under the authority of the United States. Expressio unius, exclusio est alterius.*

Then the 14th section gives the courts of the United States power to issue " writs of *scire facias, habeas corpus,* and all other writs *not specially provided for by statute,* which may be necessary for the exercise of their respective jurisdiction." The mandamus, however necessary it may be, having been *specially provided for by statute,* is limited by the terms of the statute providing for it, and does not come within the grant of power in the 14th section. Such are the provisions of the Constitution and the law, to guard against disastrous conflicts of jurisdiction in the case of this writ, which were likely, if not so limited, to arise.

In *Knox County* v. *Aspinwall,** singularly enough, the provision of the 13th section of the Act of 1789, *specially providing "by statute"* for the writ of *mandamus,* and limiting its

---

* 24 Howard, 376.

use, was wholly overlooked by the counsel, and consequently by the court.

2. However, conceding that *Knox County* v. *Aspinwall* was rightly decided, that is to say, that a mandamus may rightly issue from a circuit court to compel State officers to levy a tax where levy has not been previously enjoined by State courts—that case is not this. Here previously to the issue of the mandamus to levy, an injunction from the State court forbade a levy. That is the special feature of our case. It will be observed then, that in this case the mandamus cannot be granted and enforced. without compelling the respondents to do that which they are enjoined from doing by another court of competent jurisdiction. If the mandamus is allowed, they must *of necessity* disobey the one process or the other; and thus, by no possibility can they avoid liability to punishment for contempt, and that punishment is generally, if not always, imprisonment. If it be said that this result would not be the fault of the Federal courts, we reply that no more would it be the fault of the respondents. They stand before this court in no attitude of contumacy. There is no intimation in their answer of any wilful intent to disregard the orders of this court; but they do show us, we think, that their hands are completely tied, and that what the relator asks of them is a legal impossibility. They are within the jurisdiction of the State court. That court having clearly the power so to do, has adjudged the bonds in question void, and has enjoined the respondents from levying any tax to pay them. That injunction has been duly issued and duly served. The decisions of the State courts upon the question of the validity of the bonds, are not, except in special cases, subject to revision by this court. Within the scope of its jurisdiction, and as to all persons or property coming within that jurisdiction, the State judiciary is supreme, and its adjudications final. Whatever may be thought of the propriety or impropriety of its decisions, they must be accepted as binding upon parties properly before it, and persons legally brought within its jurisdiction.

The certainty of an occasional difference of opinion be-

tween two courts having jurisdiction over the same questions, long ago suggested the establishment of a rule to prevent any serious conflicts—a rule which will in every case, when applied and enforced in its true spirit, promote perfect harmony. We refer of course to the well-known rule, thus stated by this court,* and than which none can be more firmly settled, that "in all cases of concurrent jurisdiction, the court which first has possession of the subject, must decide it." It is that rule, we submit, which governs this case, and distinguishes it wholly from *Knox County* v. *Aspinwall.* There is no country in the world where so many distinct tribunals have a right to exercise complete jurisdiction over the same subject-matter. And, to enable the State and Federal courts, sitting in the same places, administering justice for the same people, and over the same subjects, to work smoothly, the rule is of inestimable value, and must be carefully acted upon.

Over this subject-matter we admit that the Circuit Court of the United States sitting in Iowa has, in a proper case, jurisdiction, and its having jurisdiction gives it power either to compel or prohibit the levy of such tax. But we assert, further, that the District and Supreme Courts of the State of Iowa have jurisdiction over precisely the same subject-matter. This will not be denied, and needs no proof. It follows, then, that neither the State nor Federal judiciary, have exclusive jurisdiction over the subject-matter of this proceeding. Either may compel the levy of the tax in question, and either may prohibit it. Nor can it be said that the Circuit Court sitting within the State of Iowa, *in construing and enforcing the constitution and laws of Iowa,* is in any sense superior to the State courts. The Federal courts are the final judges of all questions arising upon the construction of the Constitution of the United States and the acts of Congress, but in construing and enforcing the State constitution and laws they stand upon a perfect equality with the

---

* Smith *v.* McIver, 9 Wheaton, 532; and see Shelby *v.* Bacon, 10 Howard 67.

tribunals created by the constitution of the State for that purpose.*

The State court having then got possession of the matter first, cannot be disturbed in its jurisdiction of it.

3. The whole argument of the other side rests and *must* rest upon an assumption that a mandamus is like a *fi. fa.*, or *habere facias possessionem*, mere *process* issuing upon a judgment. But this is assumption of that which is false; a mistaken view of what a *mandamus* is. It is not a writ of final process at all.

In most of the States, as in England, the proceeding is not only begun by a petition or complaint and notice, but all of the proceedings and pleadings are the same, precisely the same, in every particular as in any other action at law. The defendant may plead or demur to the information upon which it is sought, or move to quash the alternative writ, or the plaintiff may reply or demur to or move to quash the answer or return of the respondent, and judgment is rendered as in any other cause. Such especially is the case in the State of Iowa,† where the code calls it, over and over again, an "action," and where its "form of pleading" is prescribed; being made the same as in *assumpsit.*‡

As said by this court,§ in modern practice it is nothing more nor less than an ordinary suit at law.

This is peculiarly the case when the proceeding as here is against third persons who were not a party to any other action with the relator, and where the relief sought is not simply to compel a defendant in a judgment to do some act, which by the judgment he is legally required to do, but where the relief is beside the judgment, and in aid of the rights of the plaintiff against a defendant, who was no party to the mandamus. In no court, under no circumstances, can this writ be granted, except in term time, and upon due notice to the party, *the very person* against whom it is sought. In

---

\* Pulliam *v.* Osborne, 17 Howard, 471, and cases there cited.

† Chance *v.* Temple, 5 Iowa, 179.          ‡ See *supra*, pp. 169–70.

§ Commonwealth *v.* Dennison, 24 Howard, 97; Kendall *v.* Stokes, 3 Id. 100.

this important regard it differs from the ordinary writ of execution incident to a judgment, and to which the creditor is entitled as of course. It is a writ which the court may grant or refuse to grant, depending upon the case made.

The idea that a mandamus will in any case issue as "process" in order to obtain the fruits of a judgment in the event of a failure to get the money on ordinary execution, is wholly new. As respects this special case we submit that it is absurd. The petition for the mandamus sets forth a contract and relies on it; and accordingly asks for a mandamus to compel the levy of a tax not only now to pay the judgment, but to pay also all coupons that have become due *since* the judgment, and all that *shall* become due until the maturity of the bond. Was ever "process" like this heard of on an ordinary judgment upon an ordinary railroad bond? As respects the State of Iowa, with which we are here concerned, this position is in the very face of its code. The action cannot be got under the Process Act at all. When you call it a "proceeding," the matter is given up, unless you prove that it is a proceeding in the nature of final process, and not one in the nature of an action: the rule about comity prevails. There is but one writ in Iowa, or elsewhere, which issues to enforce a judgment at law and as a part of the suit, and that is the ordinary writ of execution. It often happens indeed that a plaintiff fails to get his money by an execution, and has therefore to resort to some other remedy, as *ex. gr.*, to a bill in chancery. But is there, among the numerous cases of such bills, one in which it has been held that the court in which the creditor's bill is filed, gets a jurisdiction dating from the commencement of the original suit? Yet if the court which is applied to for a mandamus to aid in the collection of its judgment, may assume that its jurisdiction in the mandamus case reaches back to the commencement of the original suit, why not the same thing when a creditor's bill is filed for the same purpose? The most that can be said of this mandamus is that it is a proceeding—a suit—instituted in *aid* of the execution, or to create a fund on which the execution may be levied. But

such is the fact in every case where a creditor's bill is filed. We call in short upon counsel to point out to this court how, in any single feature or particular, a suit by *mandamus* in modern practice, differs from any other suit so as to authorize them to assume or conclude, that it is not simply a suit at law, though a suit which the court will not entertain when the party seeking it has other adequate remedy. They have produced no such authority or anything analogous to it by this or any other court. Would it not be at variance with the history and spirit of this tribunal to court unnecessary conflict with the co-ordinate tribunals of the States, and in the face of all direct authority, and of controlling analogy, to seek such occasion by holding that these suits are not suits?

In this particular case the mandamus is not only a new suit, but is one separate and distinct from the former, in that the subject-matter of the two are not the same. The object of the suit on the bonds was to recover a judgment. The object of this proceeding is to compel the levy of a tax.

In addition to all this, the court will not grant the writ to compel a party to do an act which it is not in his power, legally, to do, or which will subject him to punishment by another court having jurisdiction of him, in obedience to whose writ he is acting. It will not, to use an expression of Brinkerhoff, J.,* "place him between two fires;" and this is a universal rule of all courts, and has been as uniformly recognized in England as in this country. In *The Queen* v. *Sir Gilbert Heathcote*, so far back as the Modern Reports,† Eyre, J., speaking for the court, says:

"No instance could be produced where the courts have granted the writ, where obedience shall expose a man to *trouble or inconvenience*. Whereas, in this case, if Sir Gilbert obeys the man-

---

* Ohio and Indiana R. R. Co. *v.* The Commissioners, 7 Ohio State, 278; and see Insurance Co. *v.* Adams, 9 Peters, 571, and Ex parte Fleming, 4 Hill, 581.

† 10 Modern, 48; and see The Queen *v.* The Justices of Middlesex, 1 Perry & Davidson, 402.

damus, he will be liable to an action for false return to the court of aldermen."

Counsel replied that it was his own fault, and he might suffer the consequence.   But Eyre, J., further says :

"I agree, that unless some mandamus will lie in this case there is no remedy.   But it ought to be the concern of a court of justice to take care that while they are granting a remedy to one, they do not at the same time expose others to great inconveniences."

In the same case Lord Chief Justice Parker, after saying that there was no doubt about the jurisdiction of the court, says :

"As to Sir Gilbert, if he obey the writ he is subject to an action for a false return to the court of aldermen, and no instance yet has been produced where obedience to a mandatory writ of this court exposes a man to an action."

Far less will a court grant a mandamus to compel a man to do that which another court of co-ordinate power has enjoined him from doing.   This follows necessarily and with greater reason from the authorities already referred to.

It is quite impertinent to say that in a suit in the State court for damages, he can plead the mandamus; and if the plea is not respected, he can, if the highest court of Iowa affirm the decision of the lower State court on that point, come here term after term to Washington, under the twenty-fifth section of the Judiciary Act, and at a thousand miles from Iowa, and at a cost which may ruin him, get the decision reversed.   Or to say that if imprisoned he can get out on order of the Federal court through the Force Bill of 1833, or some other Federal statute.   The doctrine declared in the case just cited is that a court will not subject an innocent man, discharging his duty under judicial order, to this sort of inconvenience and cost; an inconvenience which may involve him in suits for the residue of his life, and costs which it may be absolutely impossible for him to pay.

The case of *Knox County* v. *Aspinwall*, much relied on by the other side, is not, as is there supposed, in point. Certainly it decides that a mandamus may issue from this court after judgment to compel county commissioners to levy a tax. But no injunction had been *previously* laid on the commissioners there not to do it. There was no State court previously in possession of the matter on which the mandamus asked for was to act. That is the *point* of our present case. That decision does not hold, nor say, nor suggest, that a mandamus is "process" like an execution, nor that it issues as a part of the original suit. The case needed no such decision. The decision is not only wholly consistent with the idea that it is an "action," a new suit, but is inconsistent with any other. The court, Grier, J., giving the opinion, speaks of it, not as an execution, nor as process; but as "remedy," and one to *enforce* the *execution* of the judgment. It does not hold that a mandamus is not a new suit. It has in short, then, no bearing at all upon the questions raised in this cause. The suit, moreover, in that case* was brought for mandamus against the original defendants against whom the judgment had been rendered, so that the parties in the original and in the mandamus case were the same, while in this they are different.

The point decided in *Wayman* v. *Southard*, and relied on too, was that the Federal courts have power to issue *executions* for the enforcement of their judgments. Of course they have; executions such as belong to the judgment and grow out of it; the sort alone of which the court was speaking. So since *Knox County* v. *Aspinwall*, they may issue mandamus even to State officers, if mandamus be "necessary for the exercise of their respective jurisdiction." But of course they can issue it only in subordination to fixed principles of law; one of which is the rule of comity that allows a court already in possession of a case to keep it. But the right to issue a mandamus to a State officer does not go one step to prove that a mandamus is final process,

---

* 21 Howard, 539.

and so outside the rule; and to make the mandamus a *part* of the former case. But to assume that it is a "process," or *quasi* process, is to assume the whole case: to assume that which is contrary to the settled definition of the word; contrary to what has been always adjudged; and to assume what is wholly denied.

So of the other cases cited *contra* to the same effect as *Wayman* v. *Southard.*

It is urged that without the allowance of a mandamus the relator's judgment cannot be collected. If this were true, the law would remain as we have stated it. There are many judgments which cannot be collected. The same result might have followed, if an execution issued upon the relator's judgment had been levied the day after a State court had through its process levied upon the property of the county subject to execution. But this court would, nevertheless, adhere to its well-settled and salutary rule, of yielding the property to the State court in such cases.

*Reply:* The doctrine of comity and prior possession is inequitably invoked in a case like this. The State court, not regarding the principles laid down by this court in *Gelpcke* v. *The City of Dubuque*, as binding on them, but treating the bonds still as void, will issue any number of injunctions. There is nothing to prevent counties getting them, and unless the decision below is reversed they will all get them, of course. The bondholders are powerless to prevent it.

It is true that the case of *Wayman* v. *Southard*, and cases to the same effect cited by us, were cases of writs of execution. But the principle which that case and the other cases establish is, that the jurisdiction continues till the judgment is satisfied; satisfied, whether by writs of execution or by other "modes of process" or "proceeding," is unimportant. It is not necessary to regard the mandamus as "process." Many cases have been decided in this court that a suppletory proceeding, either at law or equity, to execute or perform the prior judgments of the Federal courts, is auxiliary to the original suit, and maintained without regard to the

jurisdiction of the court as to the parties. *Minnesota Company* v. *St. Paul Company*,* where there had been a former suit—an action of foreclosure against the La Crosse and Milwaukee Railroad Company—was such a case. The court there say: "The present suit is really a continuation of that one." The "present suit" spoken of was by a different plaintiff against different defendants, for a different object; yet being connected with the same subject-matter, about the same railroad, and the mortgaged property of the same, the court overruled the plea to the jurisdiction, holding the "present bill necessary in order to have a declaration of what was intended by the order and decree made in that (former) suit, *and to enforce the rights which were established by it.*"

So too, Pratt and White, who had bought the railroad at the marshal's sale, and held the title thereto, were citizens of the same State with the plaintiff, and this matter was set up to devest the Federal court of its jurisdiction, as undoubtedly it would, had the last suit been considered a new suit; but the court refused to entertain the plea, saying:

"If the court has jurisdiction of the matters growing out of that sale, and order of possession, as we have already shown that it has, then it has jurisdiction to that extent of these parties without regard to their citizenship."

The argument drawn from position "between two fires," is without weight. The mandamus if pleaded will be a bar to any suit for damages in the State court; and if not so regarded by it, a writ of error lies hence under the twenty-fifth section of the Judiciary Act. As to imprisonment, the Force Bill of 1833 gives a complete remedy. We need not enlarge on provisions so abundantly known.

Mr. Justice CLIFFORD delivered the opinion of the court.

Application of the relator to the Circuit Court was for a mandamus to compel the defendants, as the supervisors of

---

* 2 Wallace, 632.

the county, to assess a tax upon the taxable property of the county to satisfy the judgment described in the transcript. Pursuant to the usual practice the court granted the alternative writ, commanding the defendants to assess the taxes, or show cause to the contrary, on or before the second day of the next term of the court. Service of the writ was duly made, but they neglected to levy the tax, and elected to show cause against the application.

They appeared, and in their return to the writ, they deny that it is their duty to levy the tax to pay the judgment, or that the relator is entitled to a peremptory writ, and allege that they have been enjoined not to assess a tax for that purpose by the State court, and aver that they cannot do so without being guilty of contempt and becoming liable to punishment. Plaintiff demurred specially to the return, and assigned the following causes of demurrer: 1. That the relator was no party to the proceedings in the State court. 2. That the proceedings in the State court were subsequent to the judgment of the relator in the Circuit Court. 3. That the State court had no jurisdiction, power, or authority, to prevent the relator from using the process of the Circuit Court to collect his judgment. 4. That the decree for an injunction rendered in the State court was no bar to the application of the relator for relief. But the court overruled the demurrer and decided that the return was sufficient. Judgment was thereupon rendered for the defendants, and the plaintiff sued out this writ of error.

I. Power was vested by law in the county judge of a county in the State of Iowa, to submit the question to the people of his county, whether they would construct or aid in the construction of roads or bridges; but when the question proposed involved the borrowing or the expenditure of money, the requirement was that it must be accompanied by a provision to lay a tax for the payment of the same in addition to the usual taxes, and the legislative enactment was, that such special tax, if voted under those circumstances, should be paid in money and in no other manner.

II. Revision of the proceedings was also devolved upon

the county judge; but if satisfied that they were correct, and that a majority of the votes had been cast in favor of the measure, it was made his duty to cause the proposition and the result of the vote to be entered at large in the minute-book of the county; and the same section of the act provides, that the entry, when so made, shall have the force and effect of an act of the General Assembly. Moneys so raised for such a purpose are regarded as specially appropriated by law and as constituting a fund, distinct from all others, in the hands of the treasurer, until the obligation assumed is discharged. Contracts made under such regulations are declared irrepealable, and the provision is that the taxes appointed for carrying the object into effect cannot be rescinded.*

III. Corporation defendants, acting under the authority of those provisions of law, on the first day of December, 1853, issued fifty bonds to the Lyons Iowa Central Railroad Company, of one thousand dollars each, with interest warrants, at the rate of seven per cent., payable semi-annually. Recitals in the respective bonds are, that they were issued by the authority of that act of the General Assembly, and of the required vote of the qualified voters of the county, taken in pursuance of that act. They were issued in payment of a subscription of five hundred shares in the capital stock of the railroad, and the record shows that the plaintiff is the holder of forty-seven of the bonds.

IV. Payment of the interest warrants having been refused, the plaintiff sued the defendants in the Circuit Court and recovered judgment against them for the same in the sum of five thousand one hundred and eighty-nine dollars and twenty-six cents, which is in full force and unsatisfied. Execution was duly issued on the same, and the marshal returned that he found no corporate property. Unable to enforce payment of his judgment, through the ordinary process of an execution, the plaintiff applied to the Circuit Court in which the judgment was recovered, for a mandamus to com-

---

* Code, §§ 114, 120.

pel the defendants to levy the tax as authorized by the people of the county at the time they voted to aid in the construction of the railroad and to issue the bonds.

V. Principal defence stated in the return of the supervisors is, that they had been enjoined from levying the tax as prayed, by a prior decree of the State court, and the record shows that the State court, at the suit of a tax-payer of the county, issued an injunction perpetually enjoining the defendants from levying the special tax voted at the time the proposition to grant aid to the railroad was adopted.   Want of jurisdiction in the Circuit Court was not alleged in the return, nor was any such ground assumed by the circuit judge who refused the writ.   Experienced counsel, however, have made that point in this court, and it becomes the duty of the court to determine it before examining the merits.   Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.*

Express determination of this court is, that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. Consequently, a writ of error will lie when a party is aggrieved in the foundation, proceedings, judgment, or execution of a suit in a court of record.†

Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution. Congress, it is conceded, possesses the uncontrolled power to legislate in respect both to the form and effect of executions and other final process to be issued in the Federal

* Rhode Island v. Massachusetts, 12 Peters, 718.

† Wayman v. Southard, 10 Wheaton, 23; Suydam v. Williamson, 20 Howard, 437·  2 Tidd's Practice, 1134;  Co. Lit., 288, b.

courts.  Implied concession also is, that Congress might authorize such courts to employ the writ of mandamus to enforce a judgment rendered in those courts in a case where the ordinary process of execution is inappropriate, and where the judgment creditor is without other legal remedy; but the defendants insist that Congress has not made any such provision.  Federal courts, it is argued, cannot act in any way on State officers, except in the specified cases in this court under the twenty-fifth section of the Judiciary Act. Support to that proposition is attempted to be drawn from the last clause of the thirteenth section of that act, which, in terms, authorizes this court to issue writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed or persons holding office under the authority of the United States.*

Neither State courts nor State officers are named in the clause, and the argument is, that the authority to issue the writ does not extend to any courts or persons except those enumerated.  *Expressio unius est exclusio alterius.*  Particular consideration of that point, however, is unnecessary, as there is no application to this court for any such writ.  Examination of the record, even for a moment, will show that the application for the writ in this case was to the Circuit Court, and that the case was brought here by writ of error to the judgment of that court.  But this court cannot issue the writ of mandamus in any case in the exercise of original jurisdiction, as no such power is conferred by the Constitution.  Direct decision of this court in the case of *Marbury* v. *Madison*,† was that the clause of the thirteenth section of the Judiciary Act referred to by the defendants, so far as it professes to authorize this court to issue the writ to persons holding office under the United States, other than judicial officers, was not warranted by the Constitution, because it contemplated the exercise of original jurisdiction in a case other than those enumerated in the instrument.

Second proposition of the defendants is, that the four-

---

* 1 Stat. at Large, 81.                    † 1 Cranch, 175.

teenth section of the Judiciary Act does not confer the power upon the Federal courts to issue the writ to a State officer in any case. They argue that it does not authorize those courts to issue it at all, as it is not one of the writs named in the section, and is specially provided for, as appears in the preceding section. Nothing, however, is better settled than the rule that the Circuit Courts in the several States may issue the writ in all cases where it may be necessary, agreeably to the principles and usages of law, to the exercise of their respective jurisdictions. Such was the construction given to the fourteenth section of the Judiciary Act at the same time that the last clause of the preceding section, except as applied to judicial officers, was held to be unconstitutional and void, and that construction has been followed to the present time.*

None of the Circuit Courts in the several States can issue the writ as an exercise of original jurisdiction, any more than this court, but they may issue it whenever it is necessary, agreeably to the principles and usages of law, to the exercise of their proper jurisdiction, and their judgments in such cases may be re-examined in this court, on writ of error, under the twenty-second section of the Judiciary Act. Objections to the jurisdiction of the Circuit Court, and of this court, are therefore overruled.

VI. Before proceeding to consider the operation and effect of the injunction issued by the State court, it becomes necessary to examine more closely into the source, nature, and operation of Federal process, and the jurisdiction and power of the Circuit Courts in the several States. Circuit Courts were created by the act of Congress, under which the judicial system of the United States was organized, but the act made no provision for the forms of process. Forms of processes in the Federal courts were regulated by the act of Congress, which was passed five days later.†

Writs and processes issuing from a Circuit Court were required by that act to bear the test of the chief justice of

---

* McIntire v. Wood, 7 Cranch, 504; McClung v. Silliman, 6 Wheaton 601; Conklin's Treatise, 161.

† 1 Stat. at Large, 93.

the Supreme Court, to be under the seal of the court, and to be signed by the clerk. By the second section of the act, it was provided that the forms of writs and executions, . . . . and the modes of process, in suits at common law, . . . . should be the same as were then used in the Supreme Courts of the States. Subsequent act adopted substantially those provisions, and made them permanent.* Legal effect of those enactments was, that Congress adopted the forms of writs and executions, and the modes of process, as then known and understood in the courts of the States, for use in the several Circuit Courts.

Modes of process, and forms of process, were in use in the States at that period, other than such as were known at common law as understood in the English courts. Radical changes had been made in some of the States, not only in the forms of mesne process, and the rules of pleading, but in the modes of process in enforcing judgment, as was well known to Congress when the Judiciary and Process Acts were passed.

Executions, it is admitted, may be issued by the Circuit Court, but the power of such courts to issue the other writs necessary to the exercise of jurisdiction, is equally clear, with the single restriction that the writ, and the mode of process, must be agreeable to the principles and usages of law. Usages of law, and not of the common law, it will be observed, are the words of the provision, which, doubtless, refers to the principles and usages of law as known and understood in the State courts at the date of that enactment.

Forms of process, mesne and final, and the modes of process varied in essential particulars from the principles and usages of the· common law, and in many cases they were different in the different States. Intention of Congress, in passing the Process Acts, was, that the forms of writs and executions, and the modes of process, and proceedings in common law suits, in the several Circuit Courts, should be the same as they were at that time in the courts of the re-

---

* 1 Stat. at Large, 276.

spective States. Instead of framing the forms of process, and prescribing the modes of process, Congress adopted those already prepared and in use in the respective States, not as State regulations, but as the rules and regulations prescribed by Congress for use in the several Circuit Courts. Adopted as they were, by an act of Congress, they became the permanent forms and modes of proceeding, and continue in force wholly unaffected by any subsequent State legislation. Alterations can only be made by Congress, or by the Federal courts, acting under the authority of an act of Congress.

Practical effect of the course pursued was, that the forms of writs and executions and the modes of process and proceedings were the same, whether the litigation was in the State court or in the Circuit Court of the United States. They were not always the same in different States nor in different circuits; and in some instances they were widely different in the different States of the same circuit. Those diversities, or many of them, continue to the present time.

Great diversity in the forms of real actions and of indictments were the necessary effect of the system. Different rules of pleading necessarily followed. Modes of process also were different, both in respect to mesne and final process. Attachment of personal and real property upon mesne process is allowed in one district, while the power to create any such lien in the service of such process is entirely unknown in another district, even in the same circuit. Lands of the debtor were subject to seizure and sale on execution in one district, while in another real property was only subject to seizure and an extent corresponding to a modified *elegit* as at common law. Money judgments in one district became a lien upon the lands of the judgment debtor, while in another the judgment creditor must first seize the lands before he was entitled to any such preference.

Remedies on judgments against municipal corporations partook of the same diversity in the different districts as that appearing in the modes of process to enforce judgments recovered against private persons. Judgment against

such a corporation might be enforced in one district by levying the execution, as issued against the corporation, upon the private property, personal or real, of any inhabitant of the municipality, while in another the appropriate remedy, in case the execution against the corporation was returned *nulla bona,* was mandamus to compel the proper officers of the corporation to assess a tax for the payment of the judgment.*

Circuit courts, by virtue of those acts of Congress, became armed with the same forms of writs and executions, and vested with the authority to employ the same modes of process, as those in use in the State courts. Permanent effect of that wise measure was, that the forms of writs and executions and the modes of process were the same, whether the litigation was in the forums of the State or in the Circuit Court of the United States.

Remark should be made that those Process Acts in terms apply only to the old States, but the Federal courts in States since admitted into the Union are, in virtue of subsequent enactments, governed by regulations substantially similar.†

Express provision in the third section of the act of the nineteenth of May, 1828, is, that writs of execution, and *other final process issued on judgments* rendered in the Federal courts, AND THE PROCEEDINGS THEREUPON, shall be the same in each State as are now used in the courts of such State.

VII. Public buildings and all other public property of a county in the State of Iowa, are exempt from execution under the law of the State, and the same law enacts that the property of the private citizen can in no case be levied upon to pay the debt of a civil corporation.‡

Return of *nulla bona* in this case therefore showed that the creditor was without remedy, unless the Circuit Court in which the judgment was recovered could issue the writ of mandamus to compel the proper officers of the county to

---

* Angell & Ames on Corporations, § 629.
† 4 Stat. at Large, 274; 5 Id. 499, 789.
‡ Code, sec. 1895; Revision, sec. 3274.

levy the tax voted for that purpose when the consent of the county was given to incur the liability.

VIII. Definition of mandamus, as given in the code of the State, is, that it is an order of a court of competent jurisdiction commanding " an inferior tribunal, corporation, board, or person, to do or not to do an act, the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station." *

Established rule in the Supreme Court of the State is, that where the debt of a municipal corporation has been reduced to judgment and the judgment creditor has no other means to enforce the payment, mandamus will be issued to compel the proper officers of the municipality to levy and collect a tax for that purpose.†

Apart from the injunction, therefore, it is an incontrovertible fact that the appropriate remedy of the plaintiff, if his judgment had been recovered in the State court, would have been mandamus to compel the defendants, as the supervisors of the county, to levy the tax previously voted to pay the judgment.

Same views have also been advanced by this court in several cases, in which there was no dissenting opinion. Mandamus, said Mr. Justice Grier, in an analogous case, is a remedy, according to well-established principles and usages of law, to compel any person, corporation, public functionary, or tribunal, to perform a duty required by law, where the duty sought to be enforced is clear and undisputable, and the party seeking relief has no other legal remedy.‡

Petitioner in that case had previously recovered judgment for interest due on bonds issued by the county as material aid in the construction of a railroad, and the report of the case shows that the same legislative act which authorized the subscription made provision that the commissioners should annually " assess a special tax sufficient to realize the

---

* Code, sec. 2179; Revision, 3761.

† Coy *v.* City Council of Lyons, 17 Iowa, 1; Dox *v.* Johnson Cr., 12 Id. 237; Clark *v.* City of Davenport, Id. 335.

‡ Commissioners of Knox Co. *v.* Aspinwall et al., 24 Howard, 303.

amount of interest to be paid for the year." Unanimous decision of this court was, that the writ of mandamus was the proper legal remedy to enforce that duty in case of neglect and refusal, and the judgment of the Circuit Court granting the writ was affirmed. Decision of the court was placed upon the ground not only that the writ was necessary to the exercise of jurisdiction in the Circuit Court, but that the law providing for a special tax was a part of the contract.

Necessary conclusion is, that the decision in that case is an authority for everything asked in the plaintiff's application, unless it be held that the power of the Circuit Court to grant relief in this case was displaced and overruled or perpetually suspended by the injunction issued from the State court.

Exactly the same views have been expressed by this court in later cases. Where a State has authorized a municipal corporation to contract and to exercise the local power of taxation to the extent necessary to meet the engagement, the power thus given cannot be withdrawn until the contract is satisfied.*

Regularity of the proceedings in the primary suit are not open to inquiry, and it is conceded that the judgment was in regular form; and if so, then the power of the Circuit Court to issue final process, agreeably to the principles and usages of law, to enforce the judgment, is undeniable.†

Authority of the Circuit Courts to issue process of any kind which is necessary to the exercise of jurisdiction and agreeable to the principles and usages of law, is beyond question, and the power so conferred cannot be controlled either by the process of the State courts or by any act of a State legislature. Such an attempt was made in the early history of Federal jurisprudence, but it was wholly unsuccessful.‡ Suit in that case was ejectment and the verdict

---

* Von Hoffman v. Quincy, 4 Wallace, 554; Supervisors v. United States, Id. 444.

† Wayman v Southard, 10 Wheaton, 22; Bank of the United States v. Halstead, Id. 56.

‡ McKim v. Voorhies, ' Cranch, 281.

was for the plaintiff. Defeated in the Circuit Court, the defendant went into the State court and obtained an injunction staying all proceedings. Plaintiff applied for a writ of *habere facias possessionem*, but the judges of the Circuit Court being opposed in opinion whether the writ ought to issue, the point was certified to this court; and the decision was that the State court had no jurisdiction to enjoin a judgment of the Circuit Court, and the directions were that the writ of possession should issue. Prior decisions of the court had determined that a Circuit Court could not enjoin the proceedings in a State court, and any attempt of the kind is forbidden by an act of Congress.*

Repeated decisions of this court have also determined that State laws, whether general or enacted for the particular case, cannot in any manner limit or affect the operation of the process or proceedings in the Federal courts.†

The Constitution itself becomes a mockery, say the court in that case, if the State legislatures may at will annul the judgments of the Federal courts, and the nation is deprived of the means of enforcing its own laws by the instrumentality of its own tribunals.‡

Congress may adopt State laws for such a purpose directly, or confide the authority to adopt them to the Federal courts, but their whole efficacy when adopted depends upon the enactments of Congress, and they are neither controlled or controllable by any State regulation.§

State courts are exempt from all interference by the Federal tribunals, but they are destitute of all power to restrain either the process or proceedings in the national courts.‖ Circuit courts and State courts act separably and independently of each other, and in their respective spheres of action the process issued by the one is as far beyond the reach of

* Diggs et al. *v.* Wolcott, 4 Cranch, 179; 1 Stat. at Large, 335.

† United States *v.* Peters, 5 Cranch, 136.

‡ Slocum *v.* Mayberry, 2 Wheaton, 9; Beers et al. *v.* Haughton, 9 Peters, 359.

§ United States *v.* Peters, 5 Cranch, 136; Boyle *v.* Zacharie et al., 6 Peters, 658.

‖ Duncan *v.* Darst et al., 1 Howard, 306; Peck *v.* Jenness, 7 Id. 625.

the other, as if the line of division between them "was traced by landmarks and monuments visible to the eye."* Appellate relations exist in a class of cases, between the State courts and this court, but there are no such relations between the State courts and the Circuit courts.

Viewed in any light, therefore, it is obvious that the injunction of a State court is inoperative to control, or in any manner to affect the process or proceedings of a Circuit court, not on account of any paramount jurisdiction in the latter courts, but because, in their sphere of action, Circuit courts are wholly independent of the State tribunals. Based on that consideration, the settled rule is, that the remedy of a party, whose property is wrongfully attached under process issued from a Circuit court, if he wishes to pursue it in a State tribunal, is trespass, and not replevin, as the sheriff cannot take the property out of the possession and custody of the marshal.† Suppose that to be so, still the defendants insist that the writ was properly refused, because the injunction was issued before the plaintiff's application was presented to the Circuit court. Undoubtedly Circuit courts and State courts, in certain controversies between citizens of different States, are courts of concurrent and co-ordinate jurisdiction, and the general rule is, that as between courts of concurrent jurisdiction, the court that first obtains possession of the controversy, or of the property in dispute, must be allowed to dispose of it without interference or interruption from the co-ordinate court. Such questions usually arise in respect to property attached on mesne process, or property seized upon execution, and the general rule is, that where there are two or more tribunals competent to issue process to bind the goods of a party, the goods shall be considered as effectually bound by the authority of the process under which they were first attached or seized.‡

Corresponding decisions have been made in this court, as

---

* Ableman v. Booth, 21 Howard, 516.

† Freeman v. Howe et al., 24 Id. 455; Buck v. Colbath, 3 Wallace, 341.

‡ Payne v. Drewe, 4 East, 523.

in the case of *Hagan* v. *Lucas,*\* where it was held that the marshal could not seize property previously attached by the sheriff, and held by him or his agent, under valid process from a State court.   Rule laid down in the case of *Taylor* v. *Carryl et al.*† is to the same effect as understood by a majority of the court.‡

Argument for the defendants is, that the rule established in those and kindred cases, controls the present controversy, but the court is of a different opinion, for various reasons, in addition to those already mentioned.   Unless it be held that the application of the plaintiff for the writ is a new suit, it is quite clear that the proposition is wholly untenable. Theory of the plaintiff is, that the writ of mandamus, in a case like the present, is a writ in aid of jurisdiction which has previously attached, and that, in such cases, it is a process ancillary to the judgment, and is the proper substitute for the ordinary process of execution, to enforce the payment of the same, as provided in the contract.   Grant that such is the nature and character of the writ, as applied in such a case, and it is clear that the proposition of the defendants must utterly fail, as in that view there can be no conflict of jurisdiction, because it has already appeared that a State court cannot enjoin the process or proceedings of a Circuit court.

Complete jurisdiction of the case, which resulted in the judgment, is conceded; and if it be true that the writ of mandamus is a remedy ancillary to the judgment, and is the proper process to enforce the payment of the same, then there is an end of the argument, as it cannot be contended that a State court can enjoin any such process of a Federal court.   When issued by a Federal court, the writ of mandamus is never a prerogative writ.§   Outside of this district no Circuit court can issue it at all in the exercise of original jurisdiction.

Power of the Circuit courts in the several States to issue

---

\* 10 Peters, 400.                                  † 20 Howard, 595.

‡ Mallett *v.* Dexter, 1 Curtis C. C. 174.

§ Kentucky *v.* Dennison, 24 Howard, 97.

the writ of mandamus is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. Express determination of this court is, that it can only be issued by those courts in cases *where the jurisdiction already exists*, and not where it is to be acquired by means of the writ.*

Proposition of the defendants proves too much; for if it be correct, the Circuit courts in the several States cannot issue the writ in any case. Such a proposition finds no support in the language of the Judiciary Act, or in the decisions of this court. Twice this court has affirmed the ruling of the Circuit court in granting the writ in analogous cases, and once or more this court has reversed the ruling of the Circuit court in refusing the writ, and remanded the cause, with directions that it should be issued.† Learned courts in the States have advanced the same views, and it does not appear that there is any contrariety of decision.‡

Tested by all these considerations, our conclusion is, that the propositions of the defendants cannot be sustained, and that the Circuit courts in the several States may issue the writ of mandamus in a proper case, where it is necessary to the exercise of their respective jurisdictions, agreeably to the principles and usages of law. Where such an exigency arises, they may issue it, but when so employed, it is neither a prerogative writ nor a new suit, in the jurisdictional sense. On the contrary, it is a proceeding ancillary to the judgment which gives the jurisdiction, and when issued, becomes a substitute for the ordinary process of execution to enforce the payment of the same, as provided in the contract.§

Next suggestion of the defendants is, that if the writ is

---

* Kendall *v.* United States, 12 Peters, 615–627; McClung *v.* Silliman, 6 Wheaton, 601; McIntire *v.* Wood, 7 Cranch, 506.

† Knox County *v.* Aspinwall et al., 24 Howard, 385; Von Hoffman *v.* Quincy, 4 Wallace, 554; Supervisors *v.* United States, Id. 446.

‡ Thomas *v.* Allegheny County, 32 Pennsylvania State, 225; Hamilton *v* Pittsburg, 34 Id. 509; Armstrong *v.* Allegheny, 37 Id. 279; Graham et al. *v.* Maddox et al., 6 American Law Register, 620; Carroll *v.* Board of Police, 28 Mississippi, 38; Moses on Mandamus, 126.

§ Kentucky *v.* Dennison, 24 Howard, 97.

issued, and they should obey its commands, they may be exposed to a suit for damages or to attachment for contempt, and imprisonment. No such apprehensions are entertained by the court, as all experience shows that the State courts at all times.have readily acquiesced in the judgments of this court in all cases confided to its determination under the Constitution and laws of Congress. Guided by the experience of the past, our just expectations of the future are that the same just views will prevail. Should it be otherwise, however, the defendants will find the most ample means of protection at hand. Proper course for them to pursue, in case they are sued for damages, is to plead the commands of the writ in bar of the suit, and if their defence is overruled, and judgment is rendered against them, a writ of error will lie to the judgment, under the twenty-fifth section of the Judiciary Act.

Remedy in case of imprisonment is a very plain one, under the seventh section of the act of the second of March, 1833, entitled, an act further to provide for the collection of the duties on imports. Prisoners in jail or confinement for any act done or omitted to be done in pursuance of a law of the United States, or any order, process, or decree of any judge or court thereof, may apply to either of the justices of the Supreme, or a judge of any District court of the United States for the writ of habeas corpus, and they are severally authorized to grant it, in addition to the authority otherwise conferred by law.*

Under any such circumstances, the wisdom of Congress has provided the means of protection to all persons sued or imprisoned for any act done or omitted to be done in pursuance of a law of the United States, or any order, process, or decree of any Federal judge or court of competent jurisdiction.

Views here expressed also control the decision in the case of *Thomson* v. *Henry County.*

JUDGMENT REVERSED, and the cause remanded with direc-

---

* 4 Stat. at Large, 634.

tions to sustain the demurrer and for further proceedings in conformity to the opinion of the court.

Mr. Justice MILLER, dissenting.

In the case of *Gelpcke* v. *Dubuque*, reported in 1st Wallace,* I felt called upon to point out the evil consequences likely to flow from the doctrine there asserted for the first time, that the construction given by the State courts to their own constitutions and statutes, could be disregarded and over-ruled by the Federal courts sitting in the same States and deciding the same controversies.

These consequences are now apparent in the judgments just rendered, whereby the State officers are commanded to disobey an injunction of a State court, rendered in regular judicial proceedings, to which they were proper parties, in a matter of which that court had undoubted jurisdiction, concerning the levy of a tax under State laws.

It may not be inappropriate to review the steps by which this court has gradually arrived at the conclusion that it can do this, for the purpose of enforcing the payment of bonds, issued without authority of law, out of the property of those who never consented to their issue or agreed to pay them.

In almost all the cases where municipal corporations have any authority at all to issue such bonds, the statutes which give the authority require that there shall first be a vote of the majority of the people of the municipality, approving the purpose for which they are issued, and authorizing their issue. Of course the law fixes the manner of taking this vote; and I believe that, until this court decided to the contrary, no court had ever held that such bonds were valid without a substantial compliance with the statutes on that subject.

But in the case of the *Commissioners of Knox County* v. *Aspinwall*, 21 Howard,† it was held that the commissioners, whose duty it was to issue these bonds in the event that a majority voted them, were to be the exclusive and final

* Page 207.                              † Page 539.

Miller, J., the Chief Justice, and Grier, J., dissenting.

judges of their own authority. It was said that because it became their duty to determine whether the bonds had been legally voted or not, before they issued them, therefore the fact that they had issued them was conclusive of the vote and of their own authority, and precluded all inquiry into that question.

These commissioners were merely the agents of the people of the municipality. Their authority depended on no private instructions, but on the public statutes of the State, which every person who dealt with them could examine. The proceedings for a vote were all of record, as well as the return of the officers taking the vote.

Yet, in the face of all this, when these agents transcend their authority, and attempt to bind upon the people of the county a load of debt which may absorb all their property, and heavily burden them for years, we are told that the agents were the final and exclusive judges of their own authority. When the highest court in the land renders a judgment or a decree, any other court before which the matter may come has a right to inquire into its authority to pass such judgment; but these mere agents of the people, whose powers are limited by law, may, by merely asserting their authority, pass a decree which no court can examine, because none can dispute their jurisdiction.

After this decision, no matter how illegal, fraudulent, or unauthorized were corporation bonds, no defence could be made to them in the Federal courts, and, of course, they were all sued upon in those courts.

But when judgments were obtained, it was found that the ordinary executions did not always produce the money, and some new device was to be resorted to for this purpose. Accordingly, we find Mr. Aspinwall applying for a writ of mandamus to compel the board of commissioners to levy the tax necessary to pay his judgment. This court held, in 24th Howard,* that he was entitled to the writ. This was decided only seven years ago, and is the first instance in which a

* Page 376.

Miller, J., the Chief Justice, and Grier, J , dissenting.

Federal court ever issued a writ of mandamus to a State officer in the history of this government.

I shall examine into its authority to do so hereafter, but merely note it in passing as among the new doctrines which this court has found it necessary to establish to enforce payment of county bonds.

The next step was the decision already mentioned of *Gelpcke* v. *Dubuque*, in which the court held that the later decisions of a State court on the construction of its own constitution, although unanimous, would be disregarded in this court in county bond cases, in favor of earlier decisions made by a divided court.

In the present case we are required to take another step in the same direction, and one still more serious. We are asked by mandamus to compel these municipal officers to disobey an injunction of the State court duly served on them, and made perpetual by a decree to which they were parties, and which, if they disobey, they will be imprisoned for such disobedience. Before doing this we are requested to reconsider the question of the right of the Federal courts to control the officers of the State in the execution of State laws, by writ of mandamus, by counsel who is commended to our consideration not more by his age and experience in the law, than by his acknowledged ability as a constitutional lawyer. In doing this, he points out that a provision of the statute bearing directly on the question did not receive the attention either of counsel or of the court, in the decision of *Aspinwall* v. *Knox County*, nor in any subsequent case.

This question must be determined by a consideration of sections thirteen and fourteen of the Judiciary Act of 1789.

The court, in the case above mentioned, bases the authority to issue this writ on the following language of section fourteen : " All the before-mentioned courts of the United States shall have power to issue writs of *scire facias*, *habeas corpus*, and other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." The writ of mandamus is not here mentioned spe-

cifically, and can only be authorized when it is necessary to the exercise of jurisdiction already existing, and when agreeable to the 'principles and usages of law; and if it is specially provided for by statute, it is not included in the "other writs" referred to in this section.

It is asserted, in this class of cases, to be necessary to the exercise of the jurisdiction of the court.

It is a little remarkable that the first case which required rts use by a Circuit court against State officers, should have arisen seventy years after the authority was granted, under which it is now called into exercise. While this consideration may not be conclusive, that the writ is unnecessary to the exercise of that court's jurisdiction, it affords a strong presumption against the existence of such necessity; and also that its issue in such cases is not agreeable to the principles and usages of law.

But any doubt we may have in the construction of the fourteenth section, standing alone, is removed by the provisions of the section which immediately precedes it. It is there said that "the Supreme Court shall also have appellate jurisdiction from the Circuit courts, and courts of the several States, in cases hereinafter specially provided for, and shall have power to issue writs of prohibition to District courts when proceeding as courts of admiralty and maritime jurisdiction, and writs of *mandamus*, in cases warranted by the principles and usages of law, *to any courts appointed or persons holding office under the authority of the United States.*"

I shall not attempt, in the face of this statute, to argue that the power granted by it to the Supreme Court to issue the writ of mandamus is limited to courts appointed and to persons holding office under the United States, when, as in the present case, it is to be directed to a person, by virtue of his office. The concluding words of the section are useless but for the purpose of so limiting it, and if these words are useless, they are the first which, in eighty years, have been found to be so in this admirable statute.

If, then, Congress, in the very sentence in which it gives appellate jurisdiction over State courts, expressly denies to

this court the right to issue the writ of mandamus to State courts and State officers, while it grants it in cases of Federal courts and Federal officers, did it intend in the next section to authorize the inferior courts, which have no appellate jurisdiction whatever over any State tribunal, to issue mandamus to State courts or to State officers? Or did it intend that while the Supreme Court itself was forbidden, both in its appellate and original jurisdiction, to issue a mandamus to State officers, that court might effect the same purpose by ordering the Circuit courts to do it? This would be an inconsistency of which there is no other like instance in the statute, and which is at variance with the care and skill which are apparent in all its parts. This view could be well supported, if the occasion justified it, by an examination of all the legislation of that period, showing the jealousy with which the rights of the States and of the State courts were guarded.

If, however, the Federal courts can, under proper circumstances, take control of these officers for the purpose of compelling them to levy taxes, it is incontrovertible that the power of the State courts over such officers, and over the subject of their right to tax, is as full and complete as that of the Federal courts can possibly be. It is, indeed, a concession to say that the jurisdiction of the Federal courts is concurrent with that of the State courts.

In the cases now under consideration it is conceded that the State courts had issued their injunction after due course of legal proceedings, in which the tax-payers were complainants and the supervisors were defendants, before any application was made to the Federal court for a mandamus.

In order to prevent such conflicts as threaten to grow out of the matter before us, in cases of concurrent jurisdiction it has been established as a rule that the court which first obtains jurisdiction of the case shall have the exclusive right to decide the matter in issue, and that any other court which may have subsequently assumed to act in the matter must, when the fact of this priority of jurisdiction is brought to its attention, proceed no further.

This principle is necessary, and is recognized in all courts; and when properly applied in the spirit of comity which should actuate courts, will be found sufficient to prevent unseemly collision between them. It has been recognized by this court so repeatedly as the rule which governs in matters of concurrent jurisdiction between the State and Federal courts that a citation of authorities is hardly necessary, but I mention *Shelby* v. *Bacon*,\* *Carroll* v. *Taylor*,† *Freeman* v. *Howe*,‡ and *Buck* v. *Colbath*.§

This principle being conceded, and the return of the supervisors to the alternative writ of mandamus, showing that they were enjoined from levying the tax to pay these bonds before the application was made to the Federal court for the writ of mandamus to compel them to levy it, it would seem to follow that the decree of the State court must be respected, and the return be held sufficient.

But here we are met with another of those judicial subtleties of which the corporation bond litigation seems to be the prolific parent.

We are told that the writ of mandamus is not a new or original proceeding, but is merely the ordinary exercise of the court's jurisdiction in enforcing a judgment at law already rendered for the payment of money; that a judgment had been rendered in favor of the relator against the County of Johnson before the injunction issued from the State court, and therefore the Federal court had first acquired jurisdiction of the case.

Let us inquire for a moment of what case the Federal court had acquired jurisdiction. Of an action of assumpsit, in which Marcus Riggs was plaintiff and Johnson County was defendant, and in which the plaintiff recovered a judgment for his debt. Of what case was it the State court had jurisdiction? Of a bill in chancery, brought by the resident tax-payers of Johnson County against the board of supervisors of that county, to enjoin them from levying a tax to pay certain bonds. Neither party to the suit in the Federal

\* 10 Howard, 56.    † 20 Id. 583.
‡ 24 Id. 454.    § 3 Wallace, 334.

court was party to the suit in the State court, or was a necessary or a proper party to it. The subject-matter of the suit in the Federal court was the ordinary collection of a debt from Johnson County. The subject-matter of the suit in the State court was the attempt of the board of supervisors to levy an illegal tax. The County of Johnson is a corporation capable to sue and be sued. The supervisors are officers of whom certain duties are required. They are not identical, and cannot be sued for the same purpose.

It surpasses my ingenuity to see how the suit in the Federal court can be said to have first obtained jurisdiction of the case in the State court. The parties, plaintiff and defendant, are all different, and the subject-matter of the suit is different, and the relief sought is different.

Much has been said in the course of argument by counsel of the incapacity of a State court to enjoin the judgment of a Federal court, or to restrain or interfere with its process.

Nothing of the kind is attempted, nor any such power claimed by the State court in the proceedings relied on in the return. The judgment of the Federal court is not mentioned or alluded to in the proceedings in the State court. Neither plaintiff nor defendant in the Federal court are made parties to the suit in the State court. Nor is any decree rendered touching its process or designed to interfere with it. All the ordinary writs, and all the ordinary powers of a court in a judgment at law, may be exhausted by the Federal court without the possibility of any collision between that court and the decree of the State court. It is only when the plaintiff in the Federal court, having exhausted his remedy in that action, brings a new suit, with new defendants, praying for a new and different relief, that the courts come into collision.

It is said in answer to all this that the writ of mandamus as applied for in this case is no new action, but is the ordinary process by which the court enforces its judgment, and that this is especially so in the Iowa Circuit, because such is the case in the Iowa State courts.

The Revision of 1860, of the Iowa statutes, must determine

the soundness of this proposition so far as the courts of that State are concerned. Chapter 153 is headed in capitals, "Action of mandamus." § 3761 describes the cases to which the action is applicable in the language used by common law writers. § 3762 says the plaintiff shall state his claim and facts sufficient to constitute a cause for such claim. § 3766. The pleadings and other proceedings in any action in which a mandamus is claimed shall be the same in all respects, as nearly as may be, as in an ordinary action for the recovery of damages. § 4181 says that when the action of mandamus is by a private person, there may be joined therewith the injunction of chapter 156, . . . . and the action shall be by ordinary proceedings.

I believe I have quoted substantially all that there is on this subject in the statutes of Iowa, and these govern the practice of her courts. I think I am also entitled to speak of the actual practice in those courts. It is clear that it is not a mere ancillary writ, but is in all cases a separate action, with pleadings as in other actions, and judgment thereon. How then can it be said that this is one of the ordinary powers of the court, incident to, and consequent upon, the judgment of the court, in an action of debt or assumpsit?

But the statutes of Iowa in this respect have not changed the common law. Bacon, in his Abridgment, says, that "since this statute (9 Ann., chap. 20), a mandamus is in the nature of an *action*, special replications and pleadings therein being admitted, and costs awarded to either side that prevails."

In the case of *Kendall* v. *Stokes*,* this court held, that " the proceeding on mandamus, is a case within the meaning of the act of Congress. . . . . It is an action, or suit brought in a court of justice, asserting a right, and is prosecuted according to the forms of judicial proceedings." And in another case between the same parties, reported 3 Howard, 100, the court says, it is now regarded as an action by the party on whose relation it is granted; and holds that the former action

---

* 12 Peters, 615.

of mandamus is a bar to an action of assumpsit for the same cause. So in *Kentucky* v. *Denison*,* it is said, " a mandamus, in modern practice, is nothing more than an action at law between the parties."

Passing from these conclusive evidences of what this very court considers to be the nature of the writ of mandamus, and what the statutes of Iowa (appealed to in the opinion of the majority as the basis of their judgment) intend it to be, if we look to the essential nature of the present proceeding we shall still be more convinced that it is a new suit in every sense of the word. We have already shown that the parties are different. The purpose of it is to enforce the levy of a tax; an object which could never be obtained, and which is not within the scope of an action of assumpsit. The parties seeking the writ in the information which they filed in the present case, did not rest their claim on the statement that they had a judgment against a corporation which they could not enforce by execution, but they go back of that and recite the issue of the bonds, and the vote of the tax to pay them by the county, and pray for this writ to enforce specifically that contract. And in the opinion just delivered, it is declared to be the object of the writ to enforce the judgment of the court, by levying the tax, " *as provided in the contract.*"

So that it is clear, that both the plaintiff in his information, and the court in its opinion, consider the writ in this case as in the nature of a bill in chancery, to enforce specific performance of a contract.

And that is precisely what it is. Was it ever heard that such a bill is merely ancillary to a judgment at law, and is only used for the purpose of enforcing a judgment for damages, for failing to pay a note or bond ? The obligation of the supervisors to levy this tax, if it exist at all, is as perfect in regard to bonds on which there is no judgment, as it is where judgment has been rendered; and this duty can as well be enforced by mandamus in the one case as in the other. It is this duty which is sought to be enforced in the

---

* 24 Howard, 97.

Miller, J., the Chief Justice, and Grier, J., dissenting.

present case.   If a mandamus is liable to issue without the judgment, how can it be said to be an incident to the judgment, and a part of that suit?

But if I am mistaken in all that I have thus far been saying, there is another proposition, supported by a uniform current of authorities, which would preclude the issuing the writ of mandamus in this case.   That is, that the writ is never issued to a party whom it would expose to imprisonment or other serious damage for obeying it.

I have not time to quote from the authorities on this subject, but they are numerous and without contradiction.*

The cases before us have been argued with great zeal and ability on both sides, and counsel for the relator were challenged to produce a single reported decision in which a mandamus had been issued to parties who would be subjected to danger, to expense, or to suffering, by obeying its order. No such case has been found, and I feel authorized to say none can be found.   With all the respect which I have for this court, and for my brethren who differ with me, I take the liberty of saying it has no right to set aside all precedent, and disregard established rules in the belief, however confidently entertained, that it is done in the cause of justice.

The CHIEF JUSTICE. I concur mainly in the views and wholly in the conclusions of my brother Miller

GRIER, J. I concur.

### Note.

Immediately after the delivery of the judgment in the preceding case, was delivered by Clifford, J., the opinion in another, in all essential matters just like it; the doctrine of the preceding case being affirmed.   It was the case of *Weber* v. *Lee County.*

---

* See The Queen *v.* Sir Gilbert Heathcote, 10 Modern, 48; The Queen *v.* Justices of Middlesex, 1 Perry & Davidson, 402; King *v.* Dyer, 2 Adolphus & Ellis, 606; People *v.* Gilmer, 5 Gilman, 243; Ex parte Fleming, 4 Hill N. Y. 581; The Ohio and Indiana Railroad Company *v.* Commissioners of Wyandot, 7 Ohio State, 278.