Price, J.
The controversy between the parties was heard at the general term of the superior court, upon a petition in error and the bill of exceptions taken at the special term, but this bill is not a part of the printed record in this court, and the plaintiff in error here does not rely on any question of fact or law which may appear in it.
Among the errors assigned in the general term, are: ' “1. Said court in special term erred in overruling the demurrer of the defendant below to the petition of the plaintiff below to which exception was taken at the time by said defendant below. 3. Said trial court erred in overruling the motion of the defendant to exclude the evidence of the plaintiff on the ground that his petition did not state facts sufficient in law to constitute a cause of action against the defendant below. ’ ’
The judgment of the special term was affirmed on all points raised, including the above, and the plaintiff in error assigns in this court as errors complained of,— (1) “Said judgment is contrary to law; (2) The amended petition of the plaintiff filed in the special term of the Superior Court does not state facts sufficient in law to constitute a cause of *477 action against the Board of Education of the School District of Cincinnati.”
Hence, it appears that the sufficiency of the amended petition was tested in each of the lower courts, and that is the only question presented in the record before us.
The plaintiff below alleges in substance, that he owns certain premises in the city of Cincinnati on the west side of Orchard street— (now called Steiner street) —the grade of which has been established by an ordinance of the city and that the street had been improved in accordance with said ordinance; that after the street was so improved, at great expense, he constructed on his lot a dwelling house with reference and in conformity to the grade established for the street; that after said house was erected in the year 1892, the Board of Education proceeded to erect a school house on the several lots owned by it which are adjacent to the plaintiff’s premises; that in making the excavation, the board wrongfully and unlawfully carried its depth below the grade of the street more than forty feet, and below the foundation walls of his house more than twelve feet, and negligently and carelessly caused the base of the hillside on said premises to be removed and cut away, thereby destroying the lateral and subjacent support to plaintiff’s premises, thereby causing the surface and loose strata of earth to remove, without shoring up or taking other reasonable precautions to support plaintiff’s house so as to prevent it from giving away, and that by reason of that neglect the foundation of his house was weakened and injured and the cistern connected with his house was destroyed. It is alleged “that by reason of the wrongful, careless and negligent acts aforesaid of *478 the defendant, the value of the plaintiff’s property has been diminished in the sum of three thousand, dollars * *
The averments of this pleading make a clear case of tort, which,consists of the unlawful and wrongful acts of the Board of Education and of its negligence, want of care and precaution. The violation of hi.s rights is charged to consist in the unlawful and wrongful acts, negligence and want of care on the part of the board. Therefore we are to determine, whether, for such tort, the board can be held to respond in daniages.
It is sued and described as a body corporate and politic under the laws of Ohio. It is not a corporation for profit, nor does it own any property, except in a trust capacity and for the purposes defined by the statute creating it. Its purposes, and powers are likewise, defined and limited, and it can only own, manage or dispose of its property, for the uses and in the manner prescribed by law. Its general powers are conferred by section 3971, Revised Statutes, and this section is made applicable to all boards of education within the state. Such boards are “declared to be bodies politic and corporate, and, as such, capable of suing and being sued, contracting and being contracted with, acquiring, holding, possessing and disposing of property, both real and personal, and taking and holding in trust for the use and benefit of such districts, any grant or devise of land, and any donation or bequest of money or other personal property, and of exercising such other powers, and having such other privileges as are conferred by this title * * The other parts of the title, measure the duties and powers of the board in all respects, so much so, that nothing seems left to inference or *479 implication. It may contract and be contracted with, but a contract not authorized by statute is ultra vires and can not be enforced, although the board is capable of suing and being sued. It has no power to bind the school district which it represents on contracts not authorized by íaw, and it has been so held repeatedly. If it cannot bind the district by such contracts, how can it be bound for unauthorized torts of the board?
It is true that boards of education are authorized, when necessary, to purchase grounds for school and school house purposes and to erect and maintain school houses; to enter into necessary contracts for the erection of proper school buildings and the purchase of school supplies, yet the method of making such contracts is prescribed by statute, so that it is the general assembly speaking through the board as to what may be done and how it must be done. The board is not authorized to commit a tort, — to be careless or negligent, and when it commits a wrong or tort, it does not in that respect represent the district,' and for its negligence or tort in any form, the board cannot make the district liable. It is without power to levy taxes except for school and school house purposes, and therefore no levy could be legally made to pay a judgment against it, if one should be recovered for its torts. The property belonging to the board and to which it holds title in its trust capacity cannot be seized or held to satisfy a judgment for damages, for it is declared in section 3973, Revised Statutes, that “all property, real or personal, vested in any board of education, shall be exempt from tax and from sale on execution, or other writ or order in the nature of an execution.”
*480 Legislative control and limitation is further shown in section 3958, Revised Statutes, which provides that “each board of education shall annually, at a regular or special meeting to be held between the third Monday in April and the first day of June, determine by estimate, as nearly as practicable, the entire amount of money necessary to be levied as a contingent fund for the continuance of the school'or schools of the district, after the state funds are exhausted, to purchase sites for school houses, to erect, purchase, lease, repair and furnish school houses, and build additions thereto, and for other school expenses.”
It is therefore very plain that, neither by a levy of tax, nor levy of execution can the property of the district or its citizens be reached to satisfy a judgment for damages against the board of education, and it would follow that such a judgment would be a dead and barren letter. Surely the law does not contemplate a right of action in the plaintiff without any remedy to enforce it.
Moreover while boards of education are “bodies politic and corporate,” as declared by statute, yet like counties, they are but quasi corporations and differ materially from municipal corporations as they are organized in this state. School districts are organized to promote education and carry into effect the provision of section 2 of article 6 of our state constitution. It says “the general assembly shall make such provisions by taxation, or otherwise, as with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; * * *.” Boards of education for these school districts, are arms or agencies of the state for the promotion of *481 education throughout the state, while “municipal corporations are called into existence, either at the direct solicitation or by the free consent of the people who compose them.” As said in Commissioners of Hamilton County v. Mighels, 7 Ohio St., 119, “a municipal corporation proper is created mainly for the interest, advantage and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the state at large for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, 'and are in fact, but a branch of the general administration of that policy. ’ ’
In that case suit was brought against the commissioners for damages resulting from falling into an unguarded opening in the court house while the plaintiff was making his way from the court room, where he had been in attendance under process of the court. Negligence of the commissioners was charged in causing the opening to be there and remaining unprotected.
At that time the statute relating to county commissioners providéd ‘ ‘ that the board of commissioners in the several counties of the state, shall be capable of suing and being sued, pleading and being impleaded, in any court of judicature within the state. * * *.” The court there held that the board of commissioners of a county are not liable, in their quasi corporate capacity, either by statute or at com *482 mon law, to an action for damages for injury resulting to a party by tbeir negligence in the discharge of their official duties. This was the law as to the liability of boards of county commissioners, until section 845, Revised Statutes, was amended and enlarged April 13, 1894 (91 O. L., 142), and we must notice the new language: — “and any such board.of county commissioners shall be liable in their official capacity for any damages received by reason of the negligence or carelessness of said commissioners in keeping any such road or bridge in proper repair. ’ ’ Even this clause would not have aided the plaintiff in Commissioners v. Mighels, supra, if it had been in the statute when he was injured. The amendment seems a very sparing one, and makes the commissioners liable officially only for negligence as to roads and bridges, and no further.
There is no statute whereby a board of education can be made liable for damages for its negligence or want of care.
In Finch v. The Board of Education of Toledo, 30 Ohio St., 37, this court held that, “a board of education is not liable in its corporate capacity for damages for an injury resulting to a pupil while attending a common school, from its negligence in the discharge of its official duty in the erection and maintenance of a common school building under its charge, in the absence of a statute creating a liability.” The opinion of the court in that case is a full discussion of the authorities, and the statutes, under which boards of education are organized and which confer their powers and regulate their conduct. The facts of that case presented a strong appeal to the court for a redress of a wrong done to a pupil through the negligence of the board, having its edu *483 cation in charge, but under the law no relief could be obtained against the board for want of a statute creating a liability.
There is no liability at common law. In the case last cited on page 47, this court says: “Having already concluded that defendant, as a quasi corporation, is a public agent employed in administering the common school system of this state, there is no principle of common law by which this action can be supported;” and refers to Commissioners v. Mighels, supra, as authority.
Again, on pages 48-9, the court says: “this defendant is but a quasi corporation of inferior grade, acting for the public as one of the state’s ministerial educational agencies, with power to levy taxes for school and school building purposes, and no other. It was a public school agent in. the city of Toledo in the same sense that a township board of education is a public school agent in a township.”
The scope of this doctrine was further discussed and illustrated in Overholser v. National Home for Disabled Soldiers, 68 Ohio St., 236. That is a recent case and we need not extend this opinion by quoting from it. It fully sustains our present position.
But it is urged that there is a statute which creates the liability in this case. It is not in the statutes creating boards of education, or prescribing their duties and limiting their powers, but it is section 2676, Revised Statutes. This section and the next following have origin in an act passed April 28, 1854, found in S. & 0. Statutes, p. 1538, as a part of the chapter for the organization of cities and incorporated villages.
*484 And sections 2676 and 2677, supra, at the time of the injuries complained of, were a part of the municipal code.
Neither they nor their original were ever a part of the school law. The organization of school boards and school districts was prior in time, but that is not of so much importance as the fact that sections 2676-7 are a part and quite distinct from the legislation for the organization of public schools and school boards.
Section 2676, supra, provides; “If the owner or possessor of any lot or land, in any city or village, digs or causes to be dug, any cellar, pit, vault or excavation, to a greater depth than nine feet below the curb of the street on which such lot or land abuts, or, if there be no curb, below the surface of the adjoining lots, and by such excavation, causes any damage to any wall, house or other building upon the lots adjoining thereto, such owner or possessor shall be liable, in a civil action to the party injured, to the full amount of the damages aforesaid.”
It seems that this statute influenced the judgment of the lower court, — the general term. In a portion of its opinion brought to our attention, it is conceded that boards of education cannot be held in damages for personal injuries, because there is no statute authorizing such actions; “but in respect of liabilities incident to the ownership or control of lands” the above statute section (2676) applies, and creates the liability in this case.
In so holding, we think the court erred. If we are correct in what we have already said as to the powers conferred upon boards of education and the limitations on those powers, the error of the general term is apparent, for the section relied upon must be con *485 strued with reference to what we have found to he the established law in this state. The title to school grounds, and other school property, is by express terms of the statute, vested in the board of education. But for what purpose?
It is not the private property of the board, but it is authorized to hold it for the state for the promotion and advancement of the education of the youth of the commonwealth, and jits control is limited according to the will of the sovereign power. The board is a mere instrumentality of the state to accomplish its purpose in establishing and carrying forward a system of common schools throughout the state. ' As heretofore stated, these boards are but arms of the sovereign, the state, and the latter has neither authorized, nor permitted, by any law, its agents to be sued for tort to either person or property.
As the citizen cannot sue the state without its consent, expressed by legislation, its agents, the boards of education cannot be sued and made liable for damages without consent of the sovereign, expressed by pertinent legislation. Such legislation exists as to contracts made within the scope defined, but it does not extend to official misconduct, negligence or want of care.
Therefore the words “owner” and “possessor” must be understood and construed with reference to this doctrine, for the board of education, is the “pos-, sessor” in the same sense, that it is or may be the “owner.” This being true, section 2676, supra, does not apply to boards of education and the property committed to their care.
If it be said that in the light* of the foregoing, the injured party has no redress, we answer in the lan *486 guage of the authorities: “Even the state or the general government may be guilty of individual wrongs, for, while each is sovereign, it is a corporation also, and as such capable of doing wrongful acts. The difficulty here is with the remedy, not with the right. No sovereignty is subject to suits except with its own consent. But either this consent is given by general law, or some tribunal is established with power to hear all just claims, or, if neither of these is.done, the tort remains; and it is always to be presumed that the legislative authority will make the proper provision for redress when its attention is directed to the injury.” Cooley on Torts, marginal page 123; United States v. Peters, 5 Cranch, 139; Osborn v. Bank of U. S., 9 Wheat., 738; United States v. McLemore, 4 How., 286; Hill v. United States, 9 How., 386.
In conclusion upon the subject of remedy, we do not mean it to be understood that the alleged excessive and wrongful excavation, without protecting the plaintiff’s property, might not have been restrained in a proper and timely action for that purpose.
The judgments of the lower courts are reversed, the demurrer to the amended petition sustained and that petition is dismissed.

Judgment reversed.

Davis, C. J., Shauck, Crew, Summers and Spear, JJ.. concur.